# IN THE SUPREME COURT OF TENNESSEE
## AT NASHVILLE
April 15, 2005 Session at Pulaski[1]

## STATE OF TENNESSEE v. PATRICK D. COLLINS

**Appeal by Permission from the Court of Criminal Appeals**
**Criminal Court for Davidson County**
**No. 2001-T-324     Frank G. Clement, Jr., Judge**

---

**No. M2002-02885-SC-S09-CO - Filed June 29, 2005**

---

We granted review of this interlocutory appeal to determine whether the defendant was sufficiently advised of the consequences of refusing to take a breath-alcohol test. The arresting officer informed the defendant that his license would be suspended for one year if he refused the test, but under the provisions of Tennessee Code Annotated section 55-10-406(a) (2000) in effect at the time, the penalty was two years. The trial court held that the defendant was not sufficiently advised of the consequences and barred the State from seeking any suspension of the defendant's driver's license. The trial court also barred the State from arguing to the jury on the DUI charge that the defendant had refused the breath test. The Court of Criminal Appeals reversed, holding that the defendant was adequately advised of the consequences for refusing the test. After reviewing the record and applicable authority, we affirm in part and reverse in part the decision of the Court of Criminal Appeals on the separate grounds set forth herein. We hold that although the State may request suspension of Collins' license, the State may not seek a suspension of longer than one year because Collins was incorrectly advised of the consequences of refusing to take the test.

**Tenn. R. App. P. 11 Appeal by Permission; Judgment of the Court of Criminal Appeals Affirmed in part and Reversed in part**

E. RILEY ANDERSON, J., delivered the opinion of the court, in which FRANK F. DROWOTA, III, C.J., and ADOLPHO A. BIRCH, JR., JANICE M. HOLDER, and WILLIAM M. BARKER, JJ., joined.

V. Michael Fox, Nashville, Tennessee, and Darren J. Scoggins, Burns, Tennessee, for the Appellant, Patrick David Collins.

Paul G. Summers, Attorney General and Reporter; Michael E. Moore, Solicitor General; Elizabeth T. Ryan, Senior Counsel; Victor S. (Torry) Johnson, III, District Attorney General; and Scott R. McMurtry, Assistant District Attorney General, for the Appellee, State of Tennessee.

---

[1] Oral argument was heard in this case on April 15, 2005, in Pulaski, Giles County, Tennessee, as part of this Court's S.C.A.L.E.S. (**S**upreme **C**ourt **A**dvancing **L**egal **E**ducation for **S**tudents) project.

## OPINION

## Background

This case comes to us on a pre-trial interlocutory appeal. The facts contained in the limited record are as follows.

On September 28, 2000, defendant Patrick Collins ("Collins") was stopped for speeding in Davidson County, Tennessee. After subjecting Collins to a number of field sobriety tests, the arresting officer determined that Collins was intoxicated. The officer then read Collins a standard script, issued by the Metropolitan Nashville Police Department ("Metro"), advising Collins:

> There are reasonable grounds to believe you were driving or in physical control of a motor vehicle while under the influence of alcohol. I hereby request you to submit to a breath alcohol test. You will be informed of the results and then have the right to a blood test at your own expense. You have the right to refuse this test. However, according to Tennessee state law, if you do, you will be charged with violating the implied consent law and, if the court finds you in violation of this law, then the court will suspend your license for one year. Do you understand? Will you take the breath test?

Collins did not take the breath test. He was subsequently indicted for driving under the influence of an intoxicant ("DUI") in violation of Tennessee Code Annotated section 55-10-401 (2000). The State also sought to suspend Collins' license as a penalty for his failure to take the breath test pursuant to Tennessee Code Annotated section 55-10-406 (2000).

Tennessee Code Annotated section 55-10-406(a)(1) provides that anyone driving a motor vehicle in this state "is deemed to have given consent to a test for the purpose of determining the alcoholic or drug content of that person's blood." This "implied consent" statute provides that refusal to submit to such a test subjects the driver to revocation of his license. See State v. Turner, 913 S.W.2d 158, 159-60 (Tenn. 1995). The statute further provides that "if the driver was not advised of the consequences of such refusal," a court may not suspend his license. Tenn. Code. Ann. § 55-10-406(a)(2).

Prior to 2000, the statutory revocation period was one year. As amended effective July 1, 2000, section 55-10-406(a)(3) provides for revocation periods of between one and five years. The revocation period is two years if the driver was previously convicted of, inter alia, driving under the influence. Tenn. Code Ann. § 55-10-406(a)(3)(B) (2000). Collins had a prior conviction for driving under the influence and so, under section 55-10-406(a)(3)(B), he was subject to a two-year suspension for refusing to take the alcohol test. However, although Collins was arrested nearly three months after the July 2000 amendments took effect, Metro's standard script had not been revised to

conform to the amendments. The arresting officer therefore stated to Collins that he was only subject to a one-year suspension for refusing to take the breath test.

Because the arresting officer had read him an incorrect advisory statement, Collins moved prior to trial to strike the implied consent charge and bar the State from attempting to revoke his license. Collins also sought to bar the State from arguing to the jury on the DUI charge that he refused to submit to a breath test knowing that he would lose his driver's license by refusal.

The trial court ruled that the State did not sufficiently inform Collins of the consequences of his refusal to take the breath test because Collins was informed that the consequence was a one-year, rather than a two-year, suspension. The trial court therefore ruled that the State could not seek penalties under the implied consent law. Reasoning that the statement of rights read by the officer was "wholly deficient," the trial court also held that the State could not argue to the jury that Collins knew he would lose his license if he refused the test, because Collins was not in fact going to lose his license.

The trial court granted the State's request to continue the trial in order to permit the State to pursue an interlocutory appeal as to whether it could seek suspension of Collins' license and as to whether it could argue to the jury that Collins refused the breath test knowing that he would lose his license. The Court of Criminal Appeals granted the interlocutory appeal and reversed the trial court, holding that Collins was adequately informed of the consequences of refusing the breath test. The court reasoned that it would be cumbersome and confusing to attempt to inform a suspect of all possible consequences of refusal under the revised statute. Because Collins was informed that his license would be suspended, the Court of Criminal Appeals reasoned that "[a]ny additional explanation of the consequences of refusal would be gratuitous on the officer's part." The court also held that the State would not be precluded from arguing to the jury that Collins knew his license would be suspended if he refused the breath test.

We granted review.

**Analysis**

This case requires us to interpret Tennessee Code Annotated section 55-10-406. We undertake statutory interpretation de novo, with no presumption of correctness given to the courts below. State v. Wilson, 132 S.W.3d 340, 341 (Tenn. 2004).

The requirement that officers advise drivers of the consequences of refusing an alcohol or drug test is set forth in section 55-10-406(a)(2). As of September 28, 2000, the date of Collins' arrest, that section provided in pertinent part:

> Any law enforcement officer who requests that the driver of a motor vehicle submit to a test pursuant to this section for the purpose of determining the alcoholic or drug content of the driver's blood shall,

prior to conducting such test, <u>advise the driver that refusal to submit to such test will result in the suspension of the driver's operator's license by the court</u> and, if such driver is driving on a revoked, suspended or cancelled license, when the person's privilege to do so is cancelled, suspended or revoked because of a conviction for vehicular assault under § 39-13-106, vehicular homicide under § 39-13-213, aggravated vehicular homicide under § 39-13-218, or driving under the influence of an intoxicant under § 55-10-401, that the refusal to submit to such test will, in addition, result in a fine and mandatory jail or workhouse sentence. <u>The court having jurisdiction of the offense for which such driver was placed under arrest shall not have the authority to suspend the license of a driver who refused to submit to the test if the driver was not advised of the consequences of such refusal</u>.

Tenn. Code Ann. § 55-10-406(a)(2) (emphases added). We note that Collins was advised only that refusal to take the breath test would subject him to a suspension of his license, not that there was a possibility of a fine or jail sentence. Since there is no evidence that Collins was driving on a revoked, suspended or cancelled license at the time of his arrest, however, the "consequences" of his refusal to take the test were limited to suspension of his driver's license. We express no opinion as to whether the officer's statement would have been deficient had Collins been subject to a fine or jail sentence.

The consequences of refusing to take an alcohol or drug test are set forth in section 55-10-406(a)(3) which, as of September 2000, stated in pertinent part:

> If such person having been placed under arrest and thereafter having been requested by a law enforcement officer to submit to such test and advised of the consequences for refusing to do so, refuses to submit, the test shall not be given, and such person shall be charged with violating this subsection (a) . . . . If the court finds that the driver violated the provisions of this subsection (a), except as otherwise provided in this subdivision (a)(3), the driver shall not be considered as having committed a criminal offense; however, the court shall revoke the license of such driver for a period of:
>
> (A) One (1) year, if the person does not have a prior conviction for a violation of § 55-10-401 [DUI] . . . in this state or a similar offense in any other jurisdiction.
>
> (B) Two (2) years, if the person does have a prior conviction for an offense set out in subdivision (A).

Tenn. Code Ann. § 55-10-406(a)(3).

"The most basic principle of statutory construction is to ascertain and give effect to the legislative intent without unduly restricting or expanding a statute's coverage beyond its intended scope." Owens v. State, 908 S.W.2d 923, 926 (Tenn. 1995) (citing State v. Sliger, 846 S.W.2d 262, 263 (Tenn.1993)). Where the statute's language is clear and unambiguous, we derive the legislative intent from its plain and ordinary meaning. Wilson, 132 S.W.3d at 341. If, however, "the parties derive different interpretations from the statutory language, an ambiguity exists, and we must look to the entire statutory scheme in seeking to ascertain legislative intent." Owens, 908 S.W.2d at 926 (citing Lyons v. Rasar, 872 S.W.2d 895, 897 (Tenn.1994)). "In ascertaining the intent of the legislature, this Court may look to 'the language of the statute, its subject matter, the object and reach of the statute, the wrong or evil which it seeks to remedy or prevent, and the purpose sought to be accomplished in its enactment.'" State v. Gilliland, 22 S.W.3d 266, 275 (Tenn. 2000) (quoting State v. Lewis, 958 S.W.2d 736, 739 (Tenn.1997)). "Statutes 'in pari materia' – those relating to the same subject or having a common purpose – are to be construed together." Owens, 908 S.W.2d at 926 (citing Lyons, 872 S.W.2d at 897). With these principles in mind, we turn to the parties' arguments.

Collins argues that failure to apprise him of the two-year suspension provision constitutes a failure to inform him of the consequences of his failure to take the breath test. Therefore, he argues, his failure to take the test should not subject him to suspension of his license, and the State should not be permitted to argue to the jury on the DUI charge that Collins knew he would lose his license if he refused the breath test. The State argues that the Court of Criminal Appeals correctly held that the length of the suspension is immaterial; what matters is that Collins was informed that refusal to take the test would subject him to having his license suspended. Collins further argues that all evidence of his "alleged refusal" to take the breath test should be suppressed at his DUI trial. We decline to address this broad argument. The interlocutory appeal granted by the Court of Criminal Appeals was limited to review of the trial court's determination that the State could not seek suspension of Collins' license and that the State could not argue to the jury on the DUI charge that Collins "knew" he would lose his license if he refused the breath test. Additionally, Collins did not raise to the Court of Criminal Appeals the argument that all evidence relating to the breath test should be suppressed. We therefore confine our review to the questions of whether the State may seek suspension of his license and whether the State may argue to the jury on the DUI charge that Collins knew he would lose his license.

In our view, the purpose and structure of section 55-10-406 indicate that the legislature intended only that a driver be advised that his license will be suspended if he refuses an alcohol or drug test, not that a driver be advised of the specific length of the suspension. As we have previously observed, we must construe section 55-10-406 together with all of the driving under the influence statutes. Turner, 913 S.W.2d at 160. The purpose of these statutes is "to remove from the highway, prosecute, and punish those who engage in the dangerous menace of driving under the influence." Id.; see also State v. Lawrence, 849 S.W.2d 761, 765 (Tenn. 1993) (driving under the influence statutes are "'intended to enable the drunken driver to be apprehended before he strikes'") (quoting Hughes v. State, 535 P.2d 1023, 1024 (Okla. 1975)).

Thus, the purpose of the implied consent statute is not to allow motorists suspected of driving under the influence to make an "informed choice" about whether to take an alcohol or drug test; rather, it is to advance the State's objective of keeping intoxicated drivers off the roadways. In furtherance of this objective, "[t]he legislature intended to enable the State to establish the offense by scientific evidence. For the privilege of operating a vehicle on our highways, the driver consents to a test to determine whether that privilege is, as a law enforcement officer suspects, being abused." Turner, 913 S.W.2d at 160. We note also that section 55-10-406(a)(3) specifically provides that revocation of a driver's license under the circumstances applicable to Collins does not constitute a criminal offense, as it confers only an administrative penalty. Turner, 913 S.W.2d at 163. Therefore, the rule that we strictly construe the statute against the State does not apply. Id.

Viewing the statute in this light, we conclude that section 55-10-406(a)(2) required only that Collins be informed that his license would be suspended if he refused to take the breath test. Section 55-10-406(a)(2) does not mandate that the specific length of the suspension, which varies according to the driver's prior history, be spelled out for the driver. Rather, section 55-10-406(a)(2) sets general parameters, requiring that a driver be informed that refusal to be tested will result in a license suspension and could result in a mandatory fine and mandatory jail or workhouse sentence. As the Court of Criminal Appeals noted, the 2000 amendments did not alter the language requiring that the driver be advised that refusal to take the test will result in suspension. The amendments also did not change the provision barring suspension of the license when the consequences of refusal are not stated.

The particular consequences of refusal are spelled out separately in section 55-10-406(a)(3). That section specifies the length of the suspension as well as the maximum fine and the minimum jail or workhouse sentence. Had the legislature intended these consequences to be spelled out to each driver who is requested to take an alcohol or drug test, the legislature would have included the specific consequences in section (a)(2) of the statute. The legislature did state with specificity in section (a)(2) the prior convictions which subject a driver to a mandatory fine and jail or workhouse sentence; this bolsters our conclusion that the legislature did not intend to require arresting officers to enumerate the entire range of consequences of refusal to take an alcohol or drug test in the advisory stated to drivers. Because the specific consequences are spelled out in a separate section, we conclude that a general statement of consequences is sufficient.

Although we conclude that the advisory statement made to a driver need not be specific, we disagree with the State and with the Court of Criminal Appeals that it need not be accurate. Law enforcement officers may not "misinform motorists, some of whom may understand the inaccurate warning and rely upon it." People v. Johnson, 758 N.E.2d 805, 811 (Ill. 2001) (emphasis added) (holding that rescission of summary suspension of driver's license was warranted if an inaccurate warning was given and "that misinformation directly affects the motorist's potential length of suspension").

Had the arresting officer simply advised Collins that his license would be "suspended," we would have little difficulty in concluding that the statute's requirement that Collins be advised of the

consequences of refusing the breath test was met.  Here, however, the arresting officer incorrectly advised Collins, pursuant to Metro's standard form, that refusal to take the breath test would subject him only to a one-year suspension.

There is no evidence in the record that the arresting officer intended to deceive Collins or acted with bad faith.  If the record showed that the officer had  intended to mislead Collins, we would agree with Collins that the State should be precluded from seeking any suspension of his license whatsoever.  See State v. Stade, 683 A.2d 164, 166 (Me. 1996) ("[A]lthough the State's interest in preventing drunk drivers from operating on our highways is great, the State has no legitimate interest in allowing its law enforcement officers . . . to affirmatively mislead citizens about the consequences of taking or failing to take a blood-alcohol test.").  In this case, however, the basic requirement of section 55-10-406(a)(2) was met: Collins was informed that his license would be suspended if he refused to take the breath test.  That the arresting officer then went beyond the minimum requirements of the statute and incorrectly advised Collins that his license would be suspended for one year rather than two does not void the advisory statement because the officer's error was made without an intent to deceive Collins.  We therefore hold that the State may seek to suspend Collins' driver's license, but that the State may not seek a suspension of greater than one year.[2]  Indeed, the State recognized the unfairness of subjecting Collins to a two-year suspension and represented to the trial court that it would seek only a one-year suspension.

Our holding that the error in the advisory limits the State to seeking a one-year suspension does not mean, as Collins argues, that the State should be barred from arguing to the jury that Collins knew he would lose his license if he refused the breath test.  The provisions for advising a driver of the consequences of refusing a drug or alcohol test only apply to the State's ability to seek the civil penalty of license suspension.  See Tenn. Code Ann. § 55-10-406(a)(4).  The issue of whether Collins' refusal to take the test is admissible in his criminal DUI trial is entirely separate.  We see no reason to bar the State from presenting evidence and arguing to the jury that the arresting officer informed Collins that his license would be suspended if he refused the breath test.

### Conclusion

Having considered the record and applicable authority, we hold that  the implied consent law does not require an arresting officer to enumerate the entire range of consequences of refusal to take an alcohol or drug test.  However, because Collins was erroneously advised that he would be subject only to a one-year suspension, the State may not seek to suspend Collins' driver's license for longer than one year.  We therefore reverse the Court of Criminal Appeals in part.  We affirm the Court of Criminal Appeals in part as to the admissibility of Collins' refusal to take the test on the DUI charge, and we hold that the State may argue to the jury that Collins was told that he would lose his license if he refused the breath test.  Costs are taxed equally to the State and to Patrick David Collins and his surety, for which execution may issue if necessary.

---

[2] Our holding is limited to application of the implied consent law as codified in Tennessee Code Annotated section 55-10-406.

-7-

_____
E. RILEY ANDERSON, JUSTICE