# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT KNOXVILLE
### Assigned on Briefs July 21, 2015

## STATE OF TENNESSEE v. ANTOINE TONY BLUGH

**Appeal from the Criminal Court for Sullivan County**
**No. S62120     Robert H. Montgomery, Jr., Judge**

_____

**No. E2014-01597-CCA-R3-CD – Filed October 23, 2015**

_____

The Defendant-Appellant, Antoine Tony Blugh, was charged by presentment in count 1 of violating the Sex Offender Registration Act by establishing a residence within 1000 feet of a public park, in count 2 of violating the Sex Offender Registration Act by failing to timely register within forty-eight hours of changing his residence, in count 3 of an enhanced violation of the Sex Offender Registration Act by establishing a residence within 1000 feet of a public park after already having been convicted of a prior sex offender registry violation, and in count 4 of an enhanced violation of the Sex Offender Registration Act by failing to timely register after already having been convicted of a prior sex offender registry violation, all of which were Class E felonies. See T.C.A. §§ 40-39-211, -208. Prior to trial, Blugh filed a motion to dismiss the presentment, which the court denied. At trial, the jury acquitted Blugh in counts 1 and 3 but convicted him of count 2, and, following the second part of the bifurcated trial, convicted him of the enhanced violation in count 4. After merging count 2 with count 4, the trial court imposed a sentence of two years and six months, with a mandatory minimum sentence length of 180 days' imprisonment. See id. § 40-39-208(d). On appeal, Blugh argues: (1) the trial court erred in denying his motion to dismiss the presentment; (2) the trial court erroneously instructed the jury as to the applicable law regarding his status as a sexual offender in Tennessee; and (3) the trial court erred in denying his motion for judgment of acquittal because there was a fatal variance between the crimes alleged in the presentment and the evidence presented at trial. Upon review, the judgments of the trial court are affirmed.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed**

CAMILLE R. MCMULLEN, J., delivered the opinion of the court, in which ROGER A. PAGE and ROBERT L. HOLLOWAY, JR., JJ., joined.

Stephen M. Wallace, District Public Defender, and Steven D. Bagby, Assistant Public Defender, Blountville, Tennessee, for the Defendant-Appellant, Antoine Tony Blugh.

Robert E. Cooper, Jr., Attorney General and Reporter; Jonathan H. Wardle, Assistant Attorney General; Barry P. Staubus, District Attorney General; and Emily Smith, Assistant District Attorney General, for the Appellee, State of Tennessee.

**OPINION**

On August 12, 1996, Blugh entered a guilty plea to the charge of Rape, Third Degree in the state of New York. As a result of his guilty plea, Blugh was required to register with New York's sex offender registry.

**Trial.** Jeanne Broadwell, general counsel for the Tennessee Bureau of Investigation (TBI) and legal advisor to the Sex Offender Registry Unit, testified that the TBI maintains records for each offender required to register in the state of Tennessee. Broadwell, after identifying Blugh's certified conviction, stated that Blugh had been convicted of Rape, Third Degree in New York. She identified Blugh's crime as "[b]eing 21 years old or more [and] engaging in sexual intercourse with another person less than 17 years old to whom the actor is not married." She stated that Blugh was currently categorized as a "sexual offender" in Tennessee.

Broadwell said it was her professional legal opinion that an individual with an out-of-state conviction who was required to register in the convicting state had to register in Tennessee, regardless of the type of conviction in the convicting state. She acknowledged that Blugh's certified conviction did not include a statement requiring Blugh to register as a sexual offender in the State of New York. However, a New York State Sex Offender Registration Form, which was entered as an exhibit at trial, showed that Blugh was required to register as a sex offender in New York as a result of his conviction for Rape, Third Degree.

Janet Burgess, a probation and parole officer with the Tennessee Department of Correction, testified that she was assigned to supervise Blugh on January 7, 2012. At their March 7, 2012 meeting, they reviewed the sex offender registry, and Blugh signed a copy of the registration form including these rules. Burgess stated that one of the rules they discussed was the requirement that Blugh notify her within forty-eight hours of any change in his residence. During their December 3, 2012 meeting, she reviewed the rules regarding the sex offender registry rules with Blugh a second time, and Blugh again signed the form containing the rules. Burgess stated that she went through the registration process with Blugh because he had a conviction for Rape, Third Degree, which is a sex offense, and because she had been trained that if an individual is required to register in another state, then he is required to register as a sex offender in Tennessee

as well. She stated that the TBI makes the determination about which individuals are required to register in Tennessee.

On December 10, 2012, Blugh telephoned Burgess to inform her that he had left his marital residence because of a disagreement with his wife and had checked himself into the Speedway Motel in Bristol, Tennessee. Burgess informed Blugh that it was permissible for him to stay at that address.

On the morning of December 19, 2012, Burgess learned that Blugh was not a resident of the Speedway Motel when she conducted a routine home check; however, she acknowledged that Blugh stayed at this motel the night of December 19, 2012. Burgess called Blugh on December 19, 2012, and asked him to come to her office that day. At their meeting, Blugh told Burgess that he had been staying at his mother's apartment in Bristol, Virginia, and she informed him that he could not stay there because it was outside the state of Tennessee. Blugh then told her that he would return to the Speedway Motel. During the December 19, 2012 meeting, Burgess placed a GPS tracking device on Blugh's ankle. On December 20, 2012, Blugh called and left Burgess a message that he was going to continue to stay at the Speedway Motel.

Burgess did not have contact with Blugh again until they met on January 9, 2013. At that meeting, Blugh completed a registration form but left the address section blank. Burgess asked if he had spent the last night at the Speedway Motel, and Blugh replied that he had not. Blugh then told her that it had been nine days since he had last stayed at the Speedway Motel. He asked Burgess to check a couple of addresses, including 610 Rose Street, Bristol, Tennessee, and she informed him that he could not stay at the Rose Street address because it was less than 1000 feet from a city park.

Ashley Fuller, the director of an electronic monitoring company that contracts with the Tennessee Department of Correction, was declared an expert in Global Positioning System (GPS) tracking technology. Fuller stated that during the period from December 24, 2012 to January 9, 2013, Blugh spent substantial periods of time at 610 Rose Street, Bristol, Tennessee.

Donas Garrett, Blugh's co-worker, testified that on December 24, 2012, Blugh asked to stay for a couple of weeks at his home, which was located at 610 Rose Street. Blugh never informed Garrett that he was a registered sex offender. Blugh stayed at Garrett's home from December 25, 2012 until the first week of January 2013, although Garrett acknowledged that Blugh had not spent every night at his home during that time period.

The defense recalled Janet Burgess to testify during its case-in-chief. Burgess stated that Blugh was allowed to report changes in his residence by calling her office phone or cell phone, by leaving a message on either of these phones, or by notifying her in person during their meetings. Burgess acknowledged that she was not at work from December 24, 2012 to January 1, 2013. However, she asserted that her office was not closed every day between December 25, 2012 and January 3, 2013. Burgess said that Blugh never contacted her to report that he had moved to 610 Rose Street. She stated that the only phone call she received from Blugh was on December 20, 2012, when he left a message stating that he was going to continue staying at the Speedway Motel.

During the second part of the bifurcated trial regarding count 4, the State entered a certified judgment form showing that on February 10, 2011, Blugh entered a guilty plea in Sullivan County Criminal Court to violating the sex offender registry, for which he received a sentence of three years to be served on supervised probation.

## ANALYSIS

**I. Motion to Dismiss.** Blugh contends that the trial court erred in denying his motion to dismiss the presentment. Although Blugh was acquitted of counts 1 and 3, he was convicted of counts 2 and 4. We conclude that the court's denial of the motion to dismiss was proper.

Blugh was charged in count 2 with violating the Sex Offender Registration Act by failing to timely register within forty-eight hours of changing his residence. His obligations as a convicted sex offender are outlined in Tennessee Code Annotated sections 40-39-201 to -215, which is known as the "Tennessee Sexual Offender and Violent Sexual Offender Registration, Verification and Tracking Act of 2004" (referred to in this opinion as the Act, the Registration Act, or the Sex Offender Registration Act). This Act "is a comprehensive statute requiring persons convicted of certain offenses to register with the TBI and to have their names, addresses and other information maintained in a central offender registry." Stephen Strain v. Tenn. Bureau of Investigation, No. M2007-01621-COA-R3-CV, 2009 WL 137210, at *2 (Tenn. Ct. App. Jan. 20, 2009); see also T.C.A. § 40-39-206 (2012); Ward v. State, 315 S.W.3d 461, 468 (Tenn. 2010).

"It is an offense for an offender to knowingly violate any provision" of the Sex Offender Registration Act. T.C.A. § 40-39-208(a). A person "acts knowingly with respect to the conduct or to circumstances surrounding the conduct when the person is aware of the nature of the conduct or that the circumstances exist." Id. § 39-11-302(b). A violation of the Act shall include the "[f]ailure of an offender to timely register or report[.]" Id. § 40-39-208(a)(1). As applicable to count 2, Tennessee Code Annotated

section 40-39-203(a)(1) provides, "Within forty-eight (48) hours of establishing or changing a primary or secondary residence, . . . the offender shall register or report in person, as required by this part."

On April 29, 2014, prior to trial, Blugh filed a motion to dismiss pursuant to Tennessee Rule of Criminal Procedure 12(b)(2), arguing that he did not have a conviction in Tennessee for an offense listed in Code section 40-39-202 as a "sexual offense" or a "violent sexual offense" and that his conviction in New York for Rape, Third Degree was not a "qualifying conviction" under Code section 40-39-202. In a hearing immediately prior to the start of trial, the court noted that it had previously denied the motion to dismiss, although no transcript from a hearing on this motion and no order denying the motion was included in the record. After the trial court mentioned the potential elements for a jury instruction for count 2, defense counsel renewed its motion to dismiss the presentment based on his belief that the court's proposed jury instruction was erroneous under Tennessee law.

Defense counsel again argued that Blugh's conviction did not constitute a "sexual offense" or a "violent sexual offense" under Code section 40-39-202. The court responded that because Blugh had "another qualifying conviction," he met the definition of "sexual offender" under Code section 40-39-202(19). The court also stated that pursuant to Code section 40-39-203(a)(2), Blugh was required to register because he had been "required to register as any form of sexual offender, juvenile offender or otherwise, in another jurisdiction prior to the offender's presence in this state." In response, defense counsel argued that because Blugh's New York conviction equated with the offense of statutory rape in Tennessee, his conviction did not meet the definition of "conviction" in Code sections 40-39-202(1) or -212(b). Consequently, defense counsel asserted that Blugh was not a "sexual offender" under Tennessee law and that the charges should be dismissed.

The trial court found that while Code section 40-39-212(b) identified a category of offender that must register under the Act, it believed that the definition of "sexual offender" in Code section 40-39-202(19) included an individual like Blugh who had a "qualifying conviction." Moreover, the court found that the legislature's intent was to require an individual to register in Tennessee if that individual had been required to register in the convicting state, regardless of whether that individual would have been required to register if he or she committed the offense in Tennessee. For those reasons, the trial court denied the motion to dismiss. Defense counsel renewed his motion to dismiss based upon the same arguments several times throughout trial, and the trial court denied the motion each time.

Although Blugh did not raise the issue regarding the denial of his motion to dismiss in his motion for new trial, we may address this issue on its merits. Tennessee Rule of Appellate Procedure 3(e) provides, in pertinent part:

> [I]n all cases tried by a jury, no issue presented for review shall be predicated upon error in the admission or exclusion of evidence, jury instructions granted or refused, misconduct of jurors, parties or counsel, or other action committed or occurring during the trial of the case, or other ground upon which a new trial is sought, unless the same was specifically stated in a motion for a new trial; otherwise such issues will be treated as waived.

Tenn. R. App. P. 3(e) (emphasis added). By its explicit terms, Rule 3(e) operates as a waiver of only those issues in which a new trial is the remedy for the error. Because the remedy for this issue would be the dismissal of the charges in the presentment, Blugh was not required to raise it in his motion for new trial. See id.; State v. Keel, 882 S.W.2d 410, 416 (Tenn. Crim. App. 1994) ("The waiver provision of Rule 3(e) . . . does not apply when the issue, if found to be meritorious, would result in the dismissal of the prosecution against the accused."). Therefore, we will address Blugh's issue on its merits.

First, Blugh argues that because his New York conviction for Rape, Third Degree does not meet the definition for "sexual offense" in Code section 40-39-202(20), he is not a "sexual offender" under Code section 40-39-202(19) or an "offender" under Code sections 40-39-202(9). See T.C.A. §§ 40-39-202(19) ("'Sexual offender' means a person who has been convicted in this state of committing a sexual offense or has another qualifying conviction[.]"), 40-39-202(9) ("'Offender' means sexual offender, violent sexual offender and violent juvenile sexual offender, unless otherwise designated."). He claims there is nothing within the Registration Act that requires a departure from the clear language in the definition of "offender" in Code section 40-39-202(9) and that Code section 40-39-203(a)(2) does not assign a different meaning for the term "offender."

Second, Blugh contends his out-of-state conviction is not included in the definition of "conviction" in Tennessee Code Annotated section 40-39-202(1), which provides that a "conviction . . . for an offense committed in another jurisdiction that would be classified as a sexual offense or a violent sexual offense if committed in this state shall be considered a conviction for the purposes of this part." He also argues that the meaning of the phrase "another qualifying conviction" in the definition of "sexual offender" in Code section 40-39-202(19) is derived from the definition of "conviction" in Code section 40-39-202(1). He claims this interpretation is proper because it is mirrored by the definition of "prior conviction" in Code section 40-39-207(g)(2)(B), a section having to do with

offenders who must comply with the registration requirements for life because they have one or more prior convictions for a sexual offense.  See id. § 40-39-207(g)(2)(B) ("'Prior conviction' includes convictions under the laws of any other state, government or country that, if committed in this state, would constitute a sexual offense.  If an offense in a jurisdiction other than this state is not identified as a sexual offense in this state, it shall be considered a prior conviction if the elements of the offense are the same as the elements for a sexual offense[.]").

Finally, Blugh challenges the holding in Cary Arnaz Harbin, a case in which the Tennessee Supreme Court denied permission to appeal but designated as "not for citation."  See State v. Cary Arnaz Harbin, No. 2013-02742-CCA-R3-CD, 2014 WL 5242612 (Tenn. Crim. App. Oct. 15, 2014), perm. app. denied (Tenn. Feb. 13, 2015).  In Harbin, the court held that Code section 40-39-211(a) applied not only to sexual offenders classified by the Tennessee Code but also to out-of-state offenders required to register under the Tennessee Act:

> We . . . note that the Defendant was not charged with violating the Act by failing to register in this State but rather upon establishing his primary residence within one thousand feet of a licensed day care.  See Tenn. Code Ann. § 40-39-211(a).  The initial clause of section -211(a) reads, "While mandated to comply with the requirements of this chapter, no sexual offender, as defined in § 40-39-202, or violent sexual offender, as defined in § 40-39-202," shall engage in the prohibited behavior.  If we were to read the plain text of this clause literally, this section would only apply to an offender classified by the Tennessee Code, which would yield an absurd result and cannot be what the legislature intended as the legislature also made provisions for out-of-state offenders to register. Looking at the entire statutory scheme, we further conclude that, if the Defendant was mandated to comply with the registration requirements of the Act, this necessarily included the restrictions on establishing a place of residence forbidden by section -211(a).  Therefore, we conclude that the Defendant was an offender subject to all requirements of the registration act, and the indicted charge may proceed.

Id. at *7.  Blugh claims that the absurdity noted by this court in Harbin regarding Code section 40-39-211(a) does not exist in his case because the term offender "refers to a person with either . . . in-state convictions defined by [Code] section [40-39-]202 or out-of-state convictions that would have been a sexual offense under [Code] section [40-39-] 202 if committed in this state."  Blugh asserts that Code section 40-39-203(a)(2) should "be interpreted to exclude persons who do not have convictions that would equate to a registry offense in Tennessee regardless of their registry status in other states."  He

claims that "to conclude otherwise would be to disregard and render superfluous or void the statute's use of the clearly defined term "offender" in [Code s]ection [40-39-]203(a)(2)."

Blugh's arguments concern whether he qualifies as a "sexual offender" subject to the requirements of the Registration Act. Consequently, resolving these arguments necessarily involves principles of statutory construction. See State v. Jim George Conaser, No. M2011-02086-CCA-R3-CD, 2013 WL 4505410, at *6 (Tenn. Crim. App. Aug. 21, 2013). We acknowledge that "[t]he role of courts in construing statutes is to determine legislative intent and to effectuate legislative purpose." Lind v. Beaman Dodge, Inc., 356 S.W.3d 889, 903 (Tenn. 2011). Courts must "ascertain and give effect to the legislative intent without unduly restricting or expanding a statute's coverage beyond its intended scope." Owens v. State, 908 S.W.2d 923, 926 (Tenn. 1995) (citing State v. Sliger, 846 S.W.2d 262, 263 (Tenn. 1993)); see also Carter v. Bell, 279 S.W.3d 560, 564 (Tenn. 2009). When statutory language is clear and unambiguous, we must look to its plain meaning and ordinary use to determine legislative intent. See State v. Springer, 406 S.W.3d 526, 533 (Tenn. 2013) (citing Carter, 279 S.W.3d at 564); see also State v. Collins, 166 S.W.3d 721, 726 (Tenn. 2005) (citing State v. Wilson, 132 S.W.3d 340, 341 (Tenn. 2004)). "In ascertaining the intent of the legislature, this Court may look to the language of the statute, its subject matter, the object and reach of the statute, the wrong or evil which it seeks to remedy or prevent, and the purpose sought to be accomplished in its enactment." Collins, 166 S.W.3d at 726 (internal quotation marks and citations omitted). "[If] the parties derive different interpretations from the statutory language, an ambiguity exists, and we must look to the entire statutory scheme in seeking to ascertain legislative intent." Owens, 908 S.W.2d at 926 (citing Lyons v. Rasar, 872 S.W.2d 895, 897 (Tenn. 1994)). Moreover, "[w]hen statutes conflict, either in language or application, courts should construe each statute reasonably, in a manner that avoids conflict and facilitates the harmonious operation of the law." Lind, 356 S.W.3d at 903 (citations omitted). Furthermore, "[w]here two statutes are capable of coexistence, it is this Court's duty, absent clearly expressed intention to the contrary, to regard each statute as effective." Horton v. Carroll Cnty., 968 S.W.2d 841, 844 (Tenn. Ct. App. 1997) (citation omitted). "Statutes 'in pari materia'—those relating to the same subject or having a common purpose—are to be construed together." Owens, 908 S.W.2d at 926 (citing Lyons, 872 S.W.2d at 897); see Collins, 166 S.W.3d at 726. Additionally, courts "'will not apply a particular interpretation to a statute if that interpretation would yield an absurd result.'" State v. Sims, 45 S.W.3d 1, 11 (Tenn. 2001) (quoting State v. Flemming, 19 S.W.3d 195, 197 (Tenn. 2000)). Issues regarding statutory construction are reviewed de novo without a presumption of correctness. See Baker v. State, 417 S.W.3d 428, 433 (Tenn. 2013) (citing Carter, 279 S.W.3d at 564).

At the time that Blugh entered his 1996 guilty plea to Rape, Third Degree, Tennessee had in effect the "Sexual Offender Registration and Monitoring Act," the precursor to the "Tennessee Sexual Offender and Violent Sexual Offender Registration, Verification, and Tracking Act of 2004." See T.C.A. § 40-39-101 to -111 (1996), repealed by T.C.A. § 40-39-201 to -211 (effective June 8, 2004). At the time of Blugh's guilty plea, the term "sexual offense" was defined to include "statutory rape, under § 39-13-506." See id. § 40-39-101(3) (1996). That subsection was later amended to define "sexual offense" to include the following: "Statutory rape, under § 39-13-506, if the defendant has one (1) or more prior convictions for mitigated statutory rape under § 39-13-506(a), statutory rape under § 39-13-506(b) or aggravated statutory rape under § 39-13-506(c), or if the judge orders the person to register as a sexual offender pursuant to § 39-13-506(d)[.]" See id. § 40-39-202(20)(A)(ii) (effective July 1, 2012). The New York State Sex Offender Registration Form, which was admitted into evidence, showed that Blugh was required to register with the sex offender registry in the state of New York after entering his guilty plea. Based on the July 1, 2012 amendment, which is still valid law, a trial court has the discretion to order a defendant guilty of the offense of statutory rape to register in Tennessee. Here, Blugh was charged by presentment on March 19, 2013, for his failure to timely register within forty-eight hours of changing his residence. In Ward v. State, 315 S.W.3d at 468, the Tennessee Supreme Court held that because the Act's language shows a clear intent that its requirements be applied retroactively to any sexual offender, the "present form" of the Registration Act is applicable to a defendant, rather than "the version in effect when [the defendant] entered his plea." Therefore, applying the current form of the Act, we conclude that Blugh meets the definition of "sexual offender" because his offense, if committed in Tennessee, could have resulted in a trial court ordering him to register as a sex offender in this state. Compare Harbin, 2014 WL 5242612, at *5.

Moreover, any lingering doubt is resolved by Tennessee Code Annotated section 40-39-203(a), which requires any out-of-state offender who is ordered to register in the convicting state to register in Tennessee upon establishing sufficient contact, regardless of the conviction offense. Code section 40-39-203(a) provides in pertinent part:

(a)(1) Within forty-eight (48) hours of establishing or changing a primary or secondary residence, establishing a physical presence at a particular location, becoming employed or practicing a vocation or becoming a student in this state, the offender shall register or report in person, as required by this part. Likewise, within forty-eight (48) hours of release on probation or any alternative to incarceration, excluding parole, the offender shall register or report in person, as required by this part.

(2) Regardless of an offender's date of conviction, adjudication or discharge from supervision, <u>an offender whose contact with this state is sufficient to satisfy the requirements of subdivision (a)(1) is required to register in person as required by this part, if the person was required to register as any form of sexual offender, juvenile offender or otherwise, in another jurisdiction prior to the offender's presence in this state.</u>

<u>Id.</u> § 40-39-203(a)(1)-(2) (emphasis added). Pursuant to the plain language of this subsection, we conclude that Blugh, after establishing sufficient contact with this state, was required to register in Tennessee because he was required to register in New York following entry of his guilty plea. <u>Compare</u>, <u>Harbin</u>, 2014 WL 5242612, at *6. Such an interpretation recognizes New York's adjudication and reasonably relates to the Act's purpose of protecting Tennessee residents from sexual offenders and by preventing sexual offenders from moving to Tennessee to avoid registration. <u>See id.</u> § 40-39-201(b).

Moreover, a 2009 Attorney General opinion supports this interpretation. In that opinion, the Attorney General determined that out-of-state offenders whose convictions have been expunged must register in Tennessee if they were required to register as any form of sexual offender in another jurisdiction, so long as the offender meets the residency or physical presence requirements in Code section 40-39-203. Tenn. Att'y Gen. Op. 09-01 (Jan. 8, 2009). As it relates to this case, the Attorney General concluded that "Tenn. Code Ann. § 40-39-203(a)(2) (2008 Supp.) clearly and unambiguously requires the registration of any out-of-state sex offender who establishes a presence in Tennessee if, prior to establishing such a presence, the offender was required to register in another state." <u>Id.</u>

Therefore, we conclude that the registration requirements of the Act apply to any individual, with sufficient contact with Tennessee, required to register with another state's sex offender registry, regardless of whether that individual would have been required to register if he or she had committed the offense in Tennessee. There is no question that Blugh had sufficient contact with Tennessee to trigger the registration requirements of the Act. Moreover, Code section 40-39-203(a)(2) states that the registration requirements apply "if the person was required to register as any form of sexual offender" in a different jurisdiction, a description that most certainly applies to Blugh. Such language is indicative of the General Assembly's recognition that other states may require registration for crimes other than those delineated in Tennessee and its intent for such out-of-state offenders to register in Tennessee. Because Blugh's conviction required him to register with the sex offender registry in New York, he was, upon sufficient contact with this state, required to register with the sex offender registry in Tennessee and was required to abide by all the requirements of the Tennessee Act.

Consequently, we conclude that the trial court did not err in declining to dismiss the presentment in this case.

**II.  Jury Instruction.**  Blugh also contends that due to the trial court's failure to grant his motion to dismiss prior to instructing the jury, the court provided an erroneous jury instruction in count 2 regarding the applicable law as to his status as a sex offender in Tennessee, regarding the definition of "conviction" as contained in the Act, and regarding the proper interpretations of the terms "sex offender" and "another qualifying conviction."  Noting that the trial court fashioned its own jury charge in count 2, Blugh claims the instruction given to the jury failed to fairly submit the legal issues and misled the jury as to the applicable law.

As we previously noted, Tennessee Rule of Appellate Procedure 3(e) states that all issues for review upon which a new trial is sought must be raised in a motion for new trial.  See Tenn. R. App. P. 3(e) ("[I]n all cases tried by a jury, no issue presented for review shall be predicated upon error in the admission or exclusion of evidence, jury instructions granted or refused, misconduct of jurors, parties or counsel, or other action committed or occurring during the trial of the case, or other ground upon which a new trial is sought, unless the same was specifically stated in a motion for a new trial; otherwise such issues will be treated as waived.").  Although not raised by the State, Blugh's issue regarding erroneous jury instructions, for which the appropriate remedy is a new trial, was not included in his motion for new trial.  While defense counsel attempted to orally amend his motion for new trial to include "all of the issues that [he raised during] pretrial, during trial, and sentencing" at the hearing, he did not reduce the amendment to writing within thirty days of the entry of the judgment as required by Tennessee Rules of Criminal Procedure 33(b).  See Tenn. R. Crim. P. 33(b) ("A motion for a new trial shall be in writing or, if made orally in open court, be reduced to writing, within thirty days of the date the order of sentence is entered.").  This court has routinely held that a defendant's failure to reduce an oral amendment to writing within thirty days of entry of the judgment results in waiver of the issue.  See State v. Ronnie Joe Stokes, No. E2012-02153-CCA-R3-CD, 2013 WL 5536209, at *2 (Tenn. Crim. App. Oct. 7, 2013), perm. app. denied (Tenn. Feb. 12, 2014); State v. Terry Sanders, No. M2011-00426-CCA-R3-CD, 2012 WL 5948885, at *5 (Tenn. Crim. App. Nov. 15, 2012); State v. Bobby A. Raymer, No. M2011-00995-CCA-R3-CD, 2012 WL 4841544, at *4 (Tenn. Crim. App. Oct. 10, 2012); State v. Ronald Lee Stewart, No. M2008-00337-CCA-R3-CD, 2010 WL 2025407, at *4 (Tenn. Crim. App. May 21, 2010).

Therefore, we conclude that Blugh has waived this issue, absent plain error.  The plain error doctrine states that "[w]hen necessary to do substantial justice, an appellate court may consider an error that has affected the substantial rights of a party at any time,

even though the error was not raised in the motion for a new trial or assigned as error on appeal." Tenn. R. App. P. 36(b). In order for this court to find plain error,

> "(a) the record must clearly establish what occurred in the trial court; (b) a clear and unequivocal rule of law must have been breached; (c) a substantial right of the accused must have been adversely affected; (d) the accused did not waive the issue for tactical reasons; and (e) consideration of the error is 'necessary to do substantial justice.'"

State v. Smith, 24 S.W.3d 274, 282 (Tenn. 2000) (quoting State v. Adkisson, 899 S.W.2d 626, 641-42 (Tenn. Crim. App. 1994)). "[P]lain error must be of such a great magnitude that it probably changed the outcome of the trial." Adkisson, 899 S.W.2d at 642 (internal quotations marks and citations omitted). "It is the accused's burden to persuade an appellate court that the trial court committed plain error." State v. Bledsoe, 226 S.W.3d 349, 355 (Tenn. 2007) (citing United States v. Olano, 507 U.S. 725, 734 (1993)). "[T]he presence of all five factors must be established by the record before this Court will recognize the existence of plain error, and complete consideration of all the factors is not necessary when it is clear from the record that at least one of the factors cannot be established." Smith, 24 S.W.3d at 283.

Blugh argues that the trial court provided an erroneous instruction in count 2. The right to trial by jury is guaranteed by the United States and Tennessee Constitutions. U.S. Const. amend. VI; Tenn. Const. art. I, § 6. It follows that a defendant also has a constitutional right to a correct and complete charge of the law, so that each issue of fact raised by the evidence will be submitted to the jury on proper instructions. State v. Dorantes, 331 S.W.3d 370, 390 (Tenn. 2011) (citing State v. Faulkner, 154 S.W.3d 48, 58 (Tenn. 2005); State v. Farner, 66 S.W.3d 188, 204 (Tenn. 2001); State v. Garrison, 40 S.W.3d 426, 432 (Tenn. 2000)). Because questions regarding the propriety of jury instructions are a question of law, the standard of review is de novo with no presumption of correctness. State v. Clark, 452 S.W.3d 268, 295 (Tenn. 2014) (citing State v. Hawkins, 406 S.W.3d 121, 128 (Tenn. 2013); Nye v. Bayer Cropscience, Inc., 347 S.W.3d 686, 699 (Tenn. 2011)).

When reviewing challenged jury instructions, this court must "view the instruction in the context of the charge as a whole" in determining whether prejudicial error has been committed. Id. (citing State v. Rimmer, 250 S.W.3d 12, 31 (Tenn. 2008); State v. Hodges, 944 S.W.2d 346, 352 (Tenn. 1997)). An instruction is prejudicially erroneous when "the instruction alone infected the entire trial and resulted in a conviction that violates due process[.]" Id. (citing State v. James, 315 S.W.3d 440, 446 (Tenn. 2010)). In addition, an instruction is prejudicially erroneous when the jury charge, read as a whole, fails to fairly submit the legal issues or misleads the jury as to the applicable law. Id.

(citing State v. Majors, 318 S.W.3d 850, 864-65 (Tenn. 2010)).

Prior to trial, the State filed a request for a specific jury instruction for count 2 based on its mistaken impression that none of the pattern jury instructions covered the specific fact pattern under which Blugh was required to register.[1]  The State requested the following instruction for count two:

Any person who violates the sex offender registration act is guilty of a crime.

For you to find the defendant guilty of this offense, the state must have proven beyond a reasonable doubt the existence of the following essential elements:

(1) that the defendant had a conviction for the offense of Rape in the Third Degree;
    **and**
(2) that the defendant was an adult when the offense occurred, and was required to register as any form of sexual offender in another jurisdiction prior to the defendant's presence in this state;
    **and**
(3) that the defendant knowingly failed to report in person with a designated law enforcement agency, completing and signing a TBI registration form, within forty-eight (48) hours of establishing a primary or secondary residence in Tennessee.

In response, Blugh proposed the following instruction for count 2, in pertinent part:

Any person who violates the sex offender registration act is guilty of a crime.

For you to find the defendant guilty of this offense, the state must have proven beyond a reasonable doubt the existence of the following essential elements:

(1) that the defendant had a conviction for [_____] [insert in this blank space a criminal offense or offenses listed in Tenn. Code Ann. § 40-

---

[1]As we will explain, pattern instruction T.P.I.—Crim. 10.16(a), Part P was the appropriate instruction based on the charge and evidence in this case.

-13-

<u>39-202</u> under the definition of "Sexual Offense" or "Violent Sexual Offense."];

  and

(2) that the defendant was an adult when the offense occurred, and was required to report as any form of sexual offender in another jurisdiction prior to the defendant's presence in this state;

  and

(3) that the defendant knowingly failed to report in person with the designated law enforcement agency, completing and signing a TBI registration form, after establishing or changing a primary or secondary residence.

Blugh also requested that the instructions include the first three sentences of the definition of "conviction" as set out in Code section 40-39-202.

The trial court, after considering the instructions proposed by both sides, decided to provide the following instruction to the jury at trial:

Any person who violates the Sex Offender Registration Act is guilty of a crime.

For you to find the defendant guilty of this offense[,] the state must have proven beyond a reasonable doubt the existence of the following essential elements:

(1) that the defendant was required to register as a sexual offender in any form in another jurisdiction prior to the defendant's presence in Tennessee; and

(2) that the defendant knowingly failed to report in person with the designated law enforcement agency[,] completing and signing a TBI Registration Form within 48 hours of establishing or changing a primary or secondary residence.

The court also included the first two sentences of the definition of "conviction" that was requested by Blugh. In addition, the court also included the full definitions of "secondary residence" and "sexual offender" in Code sections 40-39-202(18), -202(19), despite the fact that they had not been included in defense counsel's suggested instruction.

Despite some confusion as to this issue, we note that the pattern jury instructions contain an instruction appropriate for this offense. Pattern instruction T.P.I.—Crim. 10.16(a) states, in pertinent part:

Any person who violates the sex offender registration act is guilty of a crime.

For you to find the defendant guilty of this offense, the state must have proven beyond a reasonable doubt the existence of the following essential elements:

[Part P: **only for offenses committed on or after 7/1/11:**

(1) that the defendant was required to register [as a sexual offender in any form] in another jurisdiction prior to the defendant's presence in Tennessee;

**and**

(2) that the defendant knowingly failed to register in person with the designated law enforcement agency, completing and signing a TBI registration form, within forty-eight (48) hours of [establishing or changing a primary or secondary residence]

7 Tenn. Prac. Pattern Jury Instr. T.P.I.—Crim. 10.16(a), Part P. (2015).

We conclude that the jury instruction given by the trial court fairly submitted the legal issues and contained a proper statement of the applicable law. The instruction given to the jury at Blugh's trial was identical to the instruction suggested in the appropriate pattern instruction. See T.P.I.—Crim. 10.16(a), Part P (2015). While we acknowledge that pattern instructions do not carry the force of law, we conclude that the instruction given in this case properly set forth the elements of this offense. See State v. Rutherford, 876 S.W.2d 118, 120 (Tenn. Crim. App. 1993); State v. Norman Branch, No. W2013-00964-CCA-R3-CD, 2014 WL 3744322, at *10 (Tenn. Crim. App. July 28, 2014), perm. app. denied (Tenn. Dec. 19, 2014). Consequently, Blugh has failed to establish that a clear and unequivocal rule of law was breached, that a substantial right of his was adversely affected, or that consideration of the error was necessary to do substantial justice. Because Blugh failed to establish all five factors required for plain error, he is not entitled to relief. See Smith, 24 S.W.3d at 282.

**III.  Fatal Variance between the Presentment and the Evidence.**  Lastly, Blugh argues that the trial court erred in denying his motion for judgment of acquittal because there was a fatal variance between the allegations in the presentment and the evidence presented at trial. Specifically, he claims that the presentment alleged that he committed the offense in count 2 on or about December 28, 2012, while the proof, even when

viewed in the light most favorable to the State, established that he committed the offense on January 2, 2013, or January 3, 2013. He claims that because the evidence at trial showed that he could not have established a primary or secondary residence at 610 Rose Street any earlier than December 30, 2012, he could not have failed to register his address pursuant to the Act by December 28, 2012. Moreover, he claims that due to the forty-eight hour grace period following the change of a primary or secondary residence allowed by Code sections 40-39-202(31) and -203(a)(1) as well as the exclusion of weekends and state and federal holidays, he could not have committed the offense in count 2 before January 2, 2013, for a secondary address or January 3, 2013, for a primary address. We conclude that Blugh is not entitled to relief on this issue.

> Tennessee Rule of Criminal Procedure 29 provides, in pertinent part:
>
> On defendant's motion or its own initiative, the court shall order the entry of judgment of acquittal of one or more offenses charged in the indictment, presentment, or information after the evidence on either side is closed if the evidence is insufficient to sustain a conviction of such offense or offenses.

Tenn. R. Crim. P. 29(b). When considering a motion for judgment of acquittal, whether at the close of the State's proof or after the conclusion of all proof at trial, the trial court is only concerned with the legal sufficiency of the evidence and not with the weight of the evidence. State v. Collier, 411 S.W.3d 886, 892 (Tenn. 2013) (citing State v. Hall, 656 S.W.2d 60, 61 (Tenn. Crim. App. 1983); State v. Blanton, 926 S.W.2d 953, 957 (Tenn. Crim. App. 1996); State v. Adams, 916 S.W.2d 471, 473 (Tenn. Crim. App. 1995)). "This rule empowers the trial judge to direct a judgment of acquittal when the evidence is insufficient to warrant a conviction either at the time the state rests or at the conclusion of all the evidence." James, 315 S.W.3d at 455 (citing Overturf v. State, 571 S.W.2d 837, 839 & n.2 (Tenn. 1978)). If a defendant chooses to present proof after the trial court denies the motion for judgment of acquittal made at the close of the State's case-in-chief, then he "waive[s] any claim of error for failure to grant the motion for judgment of acquittal at the conclusion of the proof offered by the State." Collier, 411 S.W.3d at 893. However, if the defendant renews his motion for judgment of acquittal at the conclusion of all the evidence, he does not "waive his right to appeal the denial of the motion made at the close of all of the proof or to challenge the sufficiency of the convicting evidence." Id.

When a motion for judgment of acquittal is made at the close of all the proof, the trial court must favor the party opposing the motion with the strongest legitimate view of the evidence, including all reasonable inferences from the evidence, and cast aside any countervailing evidence. Id. (citing James, 315 S.W.3d at 455). We recognize that "[t]he standard by which the trial court determines a motion for judgment of acquittal is, in

essence, the same standard that applies on appeal in determining the sufficiency of the evidence after a conviction[.]" Id. (citing State v. Little, 402 S.W.3d 202, 211 (Tenn. 2013)); see State v. Thompson, 88 S.W.3d 611, 614-15 (Tenn. Crim. App. 2000). Accordingly, we must consider "whether 'any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" State v. Parker, 350 S.W.3d 883, 903 (Tenn. 2011) (quoting Jackson v. Virginia, 443 U.S. 307, 319 (1979)); see Tenn. R. App. P. 13(e). The standard of review for sufficiency of the evidence "'is the same whether the conviction is based upon direct or circumstantial evidence.'" State v. Dorantes, 331 S.W.3d at 379 (quoting State v. Hanson, 279 S.W.3d 265, 275 (Tenn. 2009)). In applying this standard of review, the State is entitled to the strongest legitimate view of the evidence and all reasonable inferences that may be drawn from that evidence. State v. Davis, 354 S.W.3d 718, 729 (Tenn. 2011) (citing Majors, 318 S.W.3d at 857). The trier of fact must evaluate the credibility of the witnesses, determine the weight given to witnesses' testimony, and reconcile all conflicts in the evidence. State v. Campbell, 245 S.W.3d 331, 335 (Tenn. 2008) (citing Byrge v. State, 575 S.W.2d 292, 295 (Tenn. Crim. App. 1978)). This court shall not substitute its inferences for those drawn by the trier of fact. Id.

Here, at the close of the State's proof, defense counsel moved for a judgment of acquittal for count 2 on the basis that this count alleged that the offense took place on December 28, 2012, while the proof at trial established that Blugh committed the offense on January 4, 2013. Defense counsel argued that because a violation of the Act is a continuing offense, Blugh risked being later prosecuted for the same violation occurring during a slightly different time period. He asserted that Blugh was "entitled to an accurate, clear and decisive indictment" that was "specific enough for him to defend against." After considering these arguments, the trial court observed that the State used the phrase "on or about" when identifying the date of the offense in count 2 and specifically charged Blugh in that count with failing to report a change of his primary or secondary residence within forty-eight hours. Moreover, the trial court recognized that during discovery Blugh was given the GPS information covering the period from December 25, 2012 to January 9, 2013, which prevented him from being surprised at trial and precluded double jeopardy problems. Ultimately, the trial court denied the motion for judgment of acquittal, holding that there was substantial evidence from which a jury could find Blugh guilty beyond a reasonable doubt of failing to notify his probation officer within forty-eight hours of establishing a primary or secondary residence. After the court made this ruling, the defense presented the testimony of Janet Burgess in its case-in-chief.

Following Burgess's testimony and at the close of his case-in-chief, Blugh renewed his motion to dismiss the charges and renewed his motion for judgment of acquittal, repeating his prior arguments and making a new argument that Code section

40-39-203(a)(2) was not referenced in the definitions of "sexual offender" and "violent sexual offender" in the TBI Instructions Form for registrants because that section was only meant to apply to "violent juvenile sexual offenders." The trial court denied both motions because it believed that Blugh's conviction, which required him to register with the sexual offender registry in New York, was a qualifying conviction that required his registration and compliance with the Act's requirements in Tennessee. The court noted that the General Assembly had an interest in preventing individuals from moving to Tennessee to avoid having to register as a sex offender. Blugh renewed his motion for judgment of acquittal after the close of proof during the second part of the bifurcated trial for count 4. Although Blugh waived his right to appeal any issue regarding the court's failure to grant the motion for judgment of acquittal at the conclusion of the proof offered by the State, he did not waive his right to appeal the court's denial of the motion made at the close of all of the proof in the case and did not waive his right to challenge the sufficiency of the convicting evidence.

Blugh argues that the trial court erred in denying his motion for judgment of acquittal as to counts 2 and 4 because there was a fatal variance between the offenses charged in the presentment and the evidence presented at trial. A variance exists when the proof at trial does not correspond to the allegations in the indictment. State v. March, 293 S.W.3d 576, 588 (Tenn. Crim. App. 2008) (citing Keel, 882 S.W.2d at 416). A variance is not fatal unless it is material and prejudicial. State v. Moss, 662 S.W.2d 590, 592 (Tenn. 1984); State v. Shropshire, 45 S.W.3d 64, 71 (Tenn. Crim. App. 2000); State v. Holloman, 835 S.W.2d 42, 45 (Tenn. Crim. App. 1992). "A material variance occurs only if the prosecutor has attempted to rely at the trial upon theories and evidence that were not fairly embraced in the allegations made in the indictment." State v. Mayes, 854 S.W.2d 638, 640 (Tenn. 1993) (citation omitted); State v. Ealey, 959 S.W.2d 605, 609 (Tenn. Crim. App. 1997). The Tennessee Supreme Court outlined the following test for determining whether a variance is prejudicial:

> "Unless substantial rights of the defendant are affected by a variance, he has suffered no harm, and a variance does not prejudice the defendant's substantial rights (1) if the indictment sufficiently informs the defendant of the charges against him so that he may prepare his defense and not be misled or surprised at trial, and (2) if the variance is not such that it will present a danger that the defendant may be prosecuted a second time for the same offense; all other variances must be considered to be harmless error."

Mayes, 854 S.W.2d at 640 (quoting Moss, 662 S.W.2d at 592).

Upon review, we conclude that the presentment and the evidence substantially corresponded. The trial transcript shows that the State relied on theories and evidence

fairly embraced in the allegations made in the presentment. The proof established that Blugh could have established a secondary residence as early as December 28, 2012, or a primary residence as early as December 29, 2012, and the Registration Act required him to report his change in address within forty-eight hours of establishing a primary or secondary residence. See T.C.A. §§ 40-39-202(12) ("'Primary residence' means a place where the person abides, lodges, resides or establishes any other living accommodations in this state for five (5) consecutive days[.]"), 40-39-202(18) ("'Secondary residence' means . . . a place where the person routinely abides, lodges or resides for a period of four (4) or more consecutive or nonconsecutive days in any month and that is not the person's primary residence, including any out-of-state address[.]"). Accordingly, the presentment sufficiently informed Blugh of his charges, allowing him to prepare a defense without being misled or surprised at trial. See State v. Quincy D. Moutry, No. E2011-02531-CCA-R3-CD, 2013 WL 3105616, at *8 (Tenn. Crim. App. June 17, 2013) (holding that the variance was neither material nor prejudicial when the indictment charged the defendant with committing the offense "on or about the 13th day of March" and the evidence established that the offense occurred on March 4 because the defendant's substantial rights were not affected); State v. Thomas Dee Huskey, No. E1999-00438-CCA-R3-CD, 2002 WL 1400059, at *190 (Tenn. Crim. App. Oct. 11, 2002) (finding that the variance was neither material nor prejudicial when the indictment stated the offense occurred between August 23, 1991, and September 6, 1991, and the victim testified that it occurred during the second week of August because the defendant was not surprised by the dates testified to by the victims and there was no danger that he would be prosecuted a second time for the same offense).

We also conclude that the presentment and evidence presented at trial are sufficient to protect Blugh from further prosecution for the same offenses. Although Blugh claims he could be later charged for these crimes because violations of the Act are continuing offenses, the principles of double jeopardy preclude a subsequent prosecution unless it is clear that the offenses are entirely separate and discrete. See, e.g., State v. Goins, 705 S.W.2d 648, 650 (Tenn. 1986). Moreover, Blugh may rely on the indictment and the entire record in this case if he is later prosecuted for the same offenses. See Mayes, 854 S.W.2d at 642 (holding that the indictment along with the record prevented a subsequent prosecution for a drug sale at the time and place identified in the indictment despite the variance as to the identity of the purchaser). Because this alleged variance was neither material nor prejudicial, the trial court did not err in denying Blugh's motion for judgment of acquittal at the close of all the proof.

## CONCLUSION

Based on the aforementioned authorities and reasoning, we affirm the judgments of the trial court.

_____
CAMILLE R. McMULLEN, JUDGE