## CRAIN vs. BEACH and BEACH.

Where the plaintiff conveyed to the defendants, their heirs and assigns forever, a right of way, or road, through the lands of the former to the lands of the latter, and the defendants covenanted with the plaintiff *to keep in repair* a certain gate to be erected by him across such private way, *and to use common care in shutting such gate, in passing and repassing the same;* Held, that under the covenant to repair, the defendants were bound to rebuild the gate when destroyed or removed; that it was a continuing covenant, and the defendants were under obligation to repair the gate as often as repairs were needed.

*Held also,* that if the gate should be suffered to be out of repair, or should be allowed to remain open, by the defendants, they would be responsible in an action for a breach of their covenant; and that the true measure of damages would be determined by the amount of the plaintiff's loss by means of the breach proved on the trial of the cause.

*Held further,* that the recovery of a judgment in such an action, would bar a subse-

Crain *v.* Beach.

quent suit brought for the same cause; but would not absolve the defendants from the duty of keeping the gate in repair, and keeping it shut thereafter. That for a renewed breach, a new action would lie; and the recovery in the former action would be no defence to the subsequent one.

*Held also,* That a refusal to rebuild the gate does not amount to a *total* and *final* breach of the covenant; nor will the damages recovered in a suit brought for a breach be presumed to have been given as a compensation for the non-performance of the covenant during all future time, so as to bar all future suits.

The case of *Fish* v. *Folley,* (6 *Hill* 54,) explained, and limited.

THIS was a writ of error to the Herkimer common pleas. Crain, the plaintiff, prosecuted the defendants before a justice of the peace in Herkimer county, upon an instrument under seal, and bearing date on the 25th day of August, 1845, by which the plaintiff, for a valuable consideration, conveyed to the defendants and one Abraham Van Horne, their heirs and assigns forever, a right of way or road from a certain point upon a highway in the town of Warren, through the lands of the plaintiff, to the lands of the defendants; and by which the defendants covenanted with the plaintiff to *keep in repair* a certain gate to be erected by him across the said private way, where it enters the field of the plaintiff from the public road, *and to use common care in shutting the said gate, in passing and repassing the same.* The plaintiff, in declaring, assigned as a breach of this covenant, that the defendants, on the 19th of October, 1846, suffered the said gate to be dilapidated, broken down, and destroyed, from that day up to the 30th day of November in the same year; by means of which the plaintiff suffered damages to his pasture lands by cattle passing from the highway into his fields, through the said broken and dilapidated gate. The defence set up to this action was a former suit and judgment upon the same instrument; by which the plaintiff recovered damages to the amount of one dollar; which judgment was rendered on the 19th day of October, 1846. The plaintiff, in the former suit, had declared that the defendants had suffered the said gate to be broken down, destroyed, and removed, and had refused to replace the same; whereby the fields of the plaintiff had been left open to the highway, and cattle had entered and done damage upon his lands. And

also that the defendants had not kept the said gate shut when passing and repassing through the same, but had left the same open, whereby cattle had entered through the said gate, and trespassed on the plaintiff's premises, to his damage, &c.

Upon the trial the plaintiff established the facts which entitled him, *prima facie*, to a recovery, and the defendants proved the averment, in their plea, of the former suit and judgment for the aforesaid breach of the same covenant. And it appeared, among other things, that the gate was removed on the 22d day of June, 1846, by some person unknown, and had never been replaced by the defendants, but that they had refused to do so, though requested by the plaintiff. It appeared that the gate posts, and two iron staples, remained, and that the cost of rebuilding the gate would be one dollar. Upon this evidence the justice held the suit barred by the judgment in the former suit; and the court of common pleas affirmed his judgment.

*F. Kernan*, for the plaintiff in error.

*V. Owen*, for the defendants in error.

*By the Court*, GRIDLEY, J. Upon the facts of this case, we are of the opinion that the justice, and the court of common pleas, erred. It is conceded upon this argument, that under the covenant to repair the gate, the law imposed upon the defendants the duty of rebuilding it, when destroyed or removed. It has even been adjudged that upon a covenant to repair, a tenant is bound to rebuild a house accidentally destroyed by fire during the term.

We think it equally clear that this covenant is, by necessity, a continuing covenant. The grant of the right of way was absolute to the *grantees and their heirs forever*. The entrance to this way from the public road was through the gate in question; and unless it was kept in repair and kept shut, the lands of the plaintiff would be liable to be trespassed upon by cattle and other animals from the highway. It cannot be doubted,

Crain *v.* Beach.

therefore, that the defendants were under obligation to repair the gate as often as repairs were needed. If then, the gate should be suffered to be out of repair, or should be allowed to remain open by the defendants, they would be responsible in an action for a breach of their covenant; and the true measure of damages would be determined by the amount of the plaintiff's loss by means of the breach proved on the trial of the cause. The recovery of a judgment in such an action, would bar a future action brought for the same cause; but would by no means absolve the defendants from the duty of keeping the gate in repair, and keeping it shut, thereafter. For a renewed breach, a new action would lie; and the recovery in the former action would be no defence to the new one. Nor do I understand the counsel of the defendants to contend for a proposition so unreasonable. But he insists that when the defendants *refused to rebuild the gate*, there was a *total* and *final* breach of the covenant; and that the damages recovered in the first suit before the justice, *should have* been, and must, by legal intendment, be *presumed to have been*, given as a compensation for the non-performance of the covenant during all future time; and that upon this principle, the second suit was barred by the first.

This conclusion, it seems to us, is liable to several weighty objections. (1.) The refusal to replace the gate did not amount to a refusal to *keep in repair* a new one if the plaintiff should replace it; still less was it a refusal to perform that part of the covenant which required the defendants to *carefully shut* such new gate, when passing and repassing the same. (2.) The declaration in the former suit was not framed with a view to recover damages for an *entire* and *perpetual* non-performance of the covenant; nor did the evidence on the trial tend to prove any such amount of damages as would result from a perpetual omission to repair, and a perpetual omission to close the gate in passing and repassing. It is therefore erroneous to say that the judgment in question, either *could* in point of law, or *did* in point of fact, embrace the enlarged compensation applicable to a final and perpetual breach. (3.) There is nothing in the

nature of the covenant, in the subject matter affected by it, nor in the condition of things as they existed at the time of the refusal to perform, or since, which rendered a full performance by the defendants impracticable, or at all difficult. The doctrine which we are called on to adopt, therefore, is, that in a case where there has been no change in the subject of a contract, nor in the circumstances or rights of the parties to it, one of the parties may, without the consent of the other, by an unlawful refusal to perform the stipulations on his part, effect a total change in the construction and legal effect of the covenant, and of the liability incurred by a breach of it. To this proposition we cannot assent. It has no foundation in moral justice, nor, as we believe, in the law of the land.

It is insisted, however, that the decision in the case of *Fish* v. *Folley*, (6 *Hill's Rep.* 54,) is an authority for this principle. And it must be confessed that the case, as reported, does seem to give some countenance to such a doctrine. The report of that case, however, gives but a partial and imperfect view of the facts as they appeared on the trial of the cause. The contract upon which the defendants in that suit were prosecuted, was entered into for a consideration of $50, and was made in the year 1822, when there was no village at Fulton where the mills mentioned in the agreement were situated, and four years before the building of the state dam across the Oswego river at that place. It also appeared that the dam from which Norman Hubbard, the defendants' intestate, agreed to furnish the water for the plaintiff's fulling mill and carding machine, was what is called a wing dam extending from a point on the eastern bank of the river in an oblique direction into and up the stream; and that in 1826, when the state dam was erected across the river, it became necessary to remove the upper part of the wing dam to make room for the foundation of the piers of the state dam. It further appeared that the state dam, by raising the water some three feet higher than the surface of the water in the wing dam, made an entire change in the hydraulic privileges of the place, and created the extensive and valuable water power which has converted a mere hamlet into the large,

flourishing, and wealthy village of Fulton. The old wing dam was at once abandoned, and large and valuable mills and manufacturing establishments took the place of the smaller erections which had formerly been supplied with water from the wing dam. Among others, who availed themselves of the new and enlarged supply of water from the dam created by the state, was the plaintiff himself, who had, for some years before the trial, drawn the water which supplied his own mills from the same abundant source. Such was the state of facts which was proved on the trial of the cause of *Fish* v. *Folley.* And inasmuch as it appeared that when the first suit was commenced, this entire change had already taken place, that the dam from which the water was, by the contract, to have been furnished, had been in part removed to make room for the dam created by the state, and the rest abandoned by reason of a far more valuable and extensive water power furnished by the dam so erected, so that the performance of the contract had become impossible, it was held at the circuit that the breach of the covenant was *entire*, and by necessity *perpetual ;* and therefore that the recovery in the first suit should have embraced damages commensurate with the injury sustained by a *total* and *perpetual* non-performance of the covenant. The court, in the opinion which sustains the decision of the circuit judge, speaks of the breach as *total,* but does not give a statement of the facts upon which it was so held at the circuit. One of the members of this court having been the judge before whom the cause of *Fish* v. *Folley* was tried, has the means of supplying these material facts which are omitted in the reported case. It will be readily seen from the above statement, that the decision in the case relied on by the defendants' counsel, furnishes no authority for the principle upon which the two tribunals below have decided this cause. In the case cited, the performance of the contract had *become impossible, by the total destruction of the subject matter of the contract,* while in this case, there was nothing but a simple refusal, accompanied with perfect ability to perform. To hold a party thus situated, absolved from a strict performance of his contract according to its terms,

would hold out a premium for fraud; and would reward a wilful violation of his solemn covenant with an exemption from its obligations. The law affords no countenance to such injustice:

> Judgment of the court below reversed, with costs.

SAME TERM. *Before the same Justices.*