IN THE SUPREME COURT OF TENNESSEE
AT NASHVILLE
May 30, 2019 Session

## MELISSA MARTIN, ET AL. v. ROLLING HILLS HOSPITAL, LLC, ET AL.

**Appeal by Permission from the Court of Appeals
Circuit Court for Williamson County
No. 2016-8    Michael Binkley, Judge**

_____

**No. M2016-02214-SC-R11-CV**

_____

HOLLY KIRBY, J., concurring in part and dissenting in part.

I agree with the majority's clarification of the role of prejudice in the substantial compliance analysis required when a defendant challenges the plaintiff's adherence to subsection (a)(2) of Tennessee Code Annotated section 29-26-121 (Supp. 2019) ("Section 121").

I write separately to address an issue that the majority deems waived, namely, the circumstances under which plaintiffs are entitled to the 120-day extension of time for filing the lawsuit provided in Section 121. The party invoking the principle of waiver has "the burden of demonstrating that the issue sought to be precluded was, in fact, not raised" below. *Powell v. Cmty. Health Sys., Inc.*, 312 S.W.3d 496, 511 (Tenn. 2010) (citing *Fayne v. Vincent*, 301 S.W.3d 162, 171 (Tenn. 2009)). In this case, after the Plaintiffs raised the issue in their brief to this Court, the Defendants failed to even assert the principle of waiver; in fact, they elected to ignore the issue altogether. Under those circumstances, the Defendants have waived the defense of waiver on this issue. Of course, this Court may exercise its discretion to nevertheless deem the issue waived, which the majority does. In this instance, I would not. *See Norton v. Everhart*, 895 S.W.2d 317, 322 (Tenn. 1995) (noting "the clear policy of this state favoring the adjudication of disputes on their merits"). Instead, I address the issue on its merits.

Our Court of Appeals has held on numerous occasions that plaintiffs must comply with the entirety of section 29-26-121, including the content requirements in subsection (a)(2), in order to rely on the 120-day extension of time for filing the lawsuit provided in

subsection (c) of Section 121. This Court, however, has not opined on whether compliance with the content requirements is necessary for reliance on the 120-day extension. Interpreting Section 121, I would hold that the 120-day extension of time to file suit is not contingent on plaintiffs' substantial compliance with the so-called "content requirements" in subsection (a)(2) of Section 121. Rather, the availability of the 120-day extension in subsection (c) hinges on compliance with the provisions referenced in subsection (c); i.e., plaintiffs may rely on the 120-day extension so long as they serve the mandatory notice to providers in accordance with the provisions on personal service or service by mail.

For that reason, I respectfully dissent from the majority's conclusion that the Plaintiffs' re-filed lawsuit is untimely.

### A. Notice Requirements in Section 121(a)

Subsection (a)(1) of Section 121 contains an express pre-suit notice requirement that requires plaintiffs asserting a health care liability claim to "give written notice of the potential claim" to defendant health care providers at least sixty days before filing the complaint. Tenn. Code Ann. § 29-26-121(a)(1). We have referred to the other five requirements, listed in (a)(2), as "content requirements" for the pre-suit notice.[1] *See, e.g., Thurmond v. Mid-Cumberland Infectious Disease Consultants, PLC*, 433 S.W.3d 512, 520 (Tenn. 2014).

The pre-suit notice requirement in subsection (a)(1) is mandatory; plaintiffs must strictly comply with this provision. *Myers v. AMISUB (SFH), Inc.*, 382 S.W.3d 300, 310 (Tenn. 2012) (holding that the notice requirement in subsection (a)(1) is "not subject to satisfaction by substantial compliance"); *see Runions v. Jackson-Madison Cnty. Gen.*

---

[1] Subsection (a)(2) states that the pre-suit notice shall include:

(A) The full name and date of birth of the patient whose treatment is at issue;
(B) The name and address of the claimant authorizing the notice and the relationship to the patient, if the notice is not sent by the patient;
(C) The name and address of the attorney sending the notice, if applicable;
(D) A list of the name and address of all providers being sent a notice; and
(E) A HIPAA compliant medical authorization permitting the provider receiving the notice to obtain complete medical records from each other provider being sent a notice.

Tenn. Code Ann. § 29-26-121(a)(2)

- 2 -

*Hosp. District*, 549 S.W.3d 77, 87 (Tenn. 2018) (reaffirming that the language in subsection (a)(1) is "clear, unambiguous, and requires strict compliance"). Failure to strictly comply with this subsection results in dismissal without prejudice. *Foster v. Chiles*, 467 S.W.3d 911, 916 (Tenn. 2015).

In contrast, the content requirements in subsection (a)(2) of section 29-26-121 are merely directory. Healthcare liability plaintiffs can satisfy the content requirements by substantial compliance with the statute's terms. *See Arden v. Kozawa*, 466 S.W.3d 758, 763 (Tenn. 2015); *Stevens ex rel. Stevens v. Hickman Cmty. Health Care Servs., Inc.*, 418 S.W.3d 547, 555-56 (Tenn. 2013). A plaintiff's failure to substantially comply with content requirements such as providing a HIPAA-compliant medical authorization also results in dismissal without prejudice to the plaintiff's ability to re-file the action. *Stevens*, 418 S.W.3d at 560.[2]

### B. 120-Day Extension of Time to File in Section 121(c)

Subsection (c) of Section 121 gives healthcare liability plaintiffs an extra 120 days, beyond the one-year statute of limitations, in which to file suit:

> (c) When notice is given to a provider as provided in this section, the applicable statutes of limitations and repose shall be extended for a period of one hundred twenty (120) days from the date of expiration of the statute of limitations and statute of repose applicable to that provider. Personal service is effective on the date of that service. Service by mail is effective on the first day that service by mail is made in compliance with subdivision (a)[(3)](B).[3] In no event shall this section operate to shorten or otherwise extend the statutes of limitations or repose applicable to any action

---

[2] *See also Ellithorpe v. Weismark*, 479 S.W.3d 818, 829 (Tenn. 2015) ("If the only failing was lack of pre-suit notice then dismissal without prejudice would be the proper remedy."); *Foster*, 467 S.W.3d at 916 ("[W]e hold that dismissal without prejudice is the proper sanction for noncompliance with Tenn. Code Ann. § 29-26-121(a)(1).").

[3] Subsection (c) of Section 121 states that "[s]ervice by mail is effective on the first day that service by mail is made in compliance with subdivision (a)(2)(B)." Tenn. Code Ann. § 29-26-121(c). However, this Court has recognized that the reference to "subdivision (a)(2)(B)" in subsection (c) of section 29-26-121 must be a mistake, because actually subsection (a)(3)(B) describes the way in which "[s]ervice by mail" can be effectuated. *Thurmond* 433 S.W.3d at 518 n.6. In the above quote of subsection (c) of Section 121, the mistaken reference to "subdivision (a)(2)(B)" is corrected. That correction is taken into account in the analysis below.

asserting a claim for health care liability, nor shall more than one (1) extension be applicable to any provider.  Once a complaint is filed alleging a claim for health care liability, the notice provisions of this section shall not apply to any person or entity that is made a party to the action thereafter by amendment to the pleadings as a result of a defendant's alleging comparative fault.

Tenn. Code Ann. § 29-26-121(c).  We held in *Runions* that, in order to receive the benefit of the 120-day extension, plaintiffs must comply with subsection (a)(1) of Section 121 by giving the mandatory pre-suit notice to the proper potential defendants.  *Runions*, 549 S.W.3d at 85.  The question becomes whether plaintiffs who wish to rely on the 120-day extension must *also* substantially comply with the content requirements in (a)(2) of Section 121. The answer to that question requires interpretation of subsection (c), quoted above.

"In all cases involving statutory construction, judges must look not only at 'the language of the statute,' but also 'its subject matter, the object and reach of the statute, the wrong or evil which it seeks to remedy or prevent, and the purpose sought to be accomplished in its enactment.'"  *Coffee Cnty. Bd. of Educ. v. City of Tullahoma*, 574 S.W.3d 832, 845-46 (Tenn. 2019) (quoting *State v. Collins*, 166 S.W.3d 721, 726 (Tenn. 2005)).  The statute must be read as a whole, and "'[s]tatutes that relate to the same subject matter or have a common purpose must be read *in pari materia* so as to give the intended effect to both.'"  *Id.* at 846 (quoting *In re Kaliyah S.*, 455 S.W.3d 533, 552 (Tenn. 2015)).  Further, we consider "[t]he overall statutory framework" and the "evolution [of the statute] over the course of time."  *Id.* at 846 (citing *In re Kaliyah S.*, 455 S.W.3d at 552 and *Powers v. State*, 343 S.W.3d 36, 50 n.19 (Tenn. 2011)).

Examining the language of Section 121(c), the first sentence gives healthcare liability claimants a 120-day extension "when notice is given. . . ."  The following two sentences explain when that notice is effective, that is, "given"—if pre-suit notice is sent via personal service, then it is effective, or given, on the date of service; if pre-suit notice is instead sent by mail, it is effective, or given, the first day service is made in compliance with Section 121 (a)(3)(B).  *Id.*

The phrase "when notice is given" is followed by the modifier "as provided in this section." As discussed further below, Court of Appeals decisions interpreting subsection (c) assume that the word "section" as used here necessarily refers to Section 121 in its entirety, including all of the content requirements. However, looking at the pre-suit notice statute as a whole, its use of terms like "section," "subsection," "§," and "subdivision"

- 4 -

lacks uniformity.[4]  As a result, the meaning of this modifying phrase is not clear. Interpretation requires consideration of the context and aim of the statute's references to "section," "subdivision," and the like. This is done below.

## C.     Evolution of Section 121

The evolution of Section 121 shows that the phrase "as provided in this section" in the first sentence of subsection (c) was not originally intended to refer to the content requirements for the subsection (a)(1) notice. *See Coffee Cnty. Bd. of Educ.*, 574 S.W.3d at 846 (consideration of a statute's evolution over time may be necessary for interpretation).  As originally enacted in 2008, subsection (c) afforded plaintiffs a 90-day extension of time to file suit  "[i]f notice is given *as provided in this section. . . ."* Tenn. Code Ann. § 29-26-121(c) (2008); 2008 Tenn. Pub. Acts Ch. 919 (S.B. 2001).  The statute did not address when service was to be effective. It did not include most of the content requirements now contained in subsection (a)(2).  For example, the statute did not direct plaintiffs to include in the notice identifying information on the patient or contact information for either the claimant or his attorney.[5]  Tenn. Code Ann. § 29-26-121(c) (2008); 2008 Tenn. Pub. Acts Ch. 919 (S.B. 2001).  Importantly, it did not include a requirement that the plaintiff provide a HIPAA-compliant medical authorization.[6]  *Id*. Accordingly, the phrase "as provided in this section" could not have been originally intended to refer to content requirements that were not yet in the statute.

When amended in 2009, Section 121 was substantially reorganized and expanded. The extension of time for plaintiffs to file suit was enlarged from 90 days to 120 days. Tenn. Code Ann. § 29-26-121(c) (2009). For the first time, the statute set out content requirements, which remain the same today.  Tenn. Code Ann. § 29-26-121(a)(1) (2009). For the first time, it delineated the means by which service of the pre-suit notice must be

---

[4] For example, subsection (d)(1) of Section 121 states that a "provider may comply with this *section* by" and then details the manner of compliance with *subsection* (d)(1)'s requirement of providing all parties with complete copies of the claimant's medical records. *See* Tenn. Code Ann. § 29-26-121(d)(1).  Thus, subsection (d)(1) uses the word "section" to refer to the requirements of that subsection only; it is clearly not referring to Section 121 as a whole.

[5] The statute directed plaintiffs to attach to the written notice "a list of all health care providers to whom notice is being given."  2008 Tenn. Pub. Acts Ch. 919 (S.B. 2001).  This appears to be the only original "content requirement." *See* Tenn. Code Ann. § 29-26-121(a)(2)(D) (2008).

[6] Another subsection, subsection (d), said only that the parties were "entitled" to obtain the claimant's medical records.  2008 Tenn. Pub. Acts Ch. 919 (S.B. 2001).

made—personal delivery or certified mail—in a manner that also remains unchanged today. Tenn. Code Ann. § 29-26-121(a)(3), (4) (2009). It also for the first time addressed *when* such service is effective—the date of personal service or the first day service by mail is made in compliance with Section 121(a)(3)(B). *Id*.

The manner in which the amended statute was reorganized is significant. The additional information on how and when service of the pre-suit notice must be made was inserted *immediately* after the sentence in subsection (c) with the phrase "as provided in this section." 2009 Tenn. Pub. Acts Ch. 425 (H.B. 2233). The beginning of that same sentence was changed from *"[i]f* notice is given" to *"[w]hen* notice is given. . . ." *Id*. The placement of these changes indicates that the legislature intended for the 2009 amendments to link the phrase "[w]hen notice is given. . . as provided in this section" to its specifications on when service of the pre-suit notice is effective.

Meanwhile, the 2009 amendments placed the new content requirements for the pre-suit notice into a new separate subsection. This new separate "content" subsection for the first time required plaintiffs to provide identifying information for the patient at issue, as well as contact information for the claimant and the attorney sending the notice. 2009 Tenn. Pub. Acts Ch. 425 (H.B. 2233). Importantly, the 2009 amendments added for the first time the requirement of a "HIPAA compliant medical authorization." *Id*. The placement of these changes in a separate subsection is an indication that the legislature did not intend for the 2009 amendments to link the phrase "[w]hen notice is given . . . as provided in this section" to the newly created content requirements.

Thus, in adopting the 2009 amendments to Section 121, the General Assembly purposefully distinguished the requirements in subsection (c) on service of the pre-suit notice from the content requirements in subsection (a)(2). Had the legislature intended to link the 120-day extension to the content of the pre-suit notice, rather than service of the notice itself, it could have specified such within subsection (c), as it did with the manner and effective date of service of the pre-suit notice. *See Am. Heritage Apartments, Inc. v. Hamilton Cnty. Water and Wastewater Treatment Auth.*, 494 S.W.3d. 31, 45 (Tenn. 2016) (presuming the legislature "acted purposely" in its statutory amendments). It did not.

In short, the evolution of Section 121 from the original 2008 version to the substantially expanded and reorganized 2009 version, the nature of the amendments, and the placement of the new language in the amended statute, all are indications that the legislature intended the 120-day extension to file suit to be linked to the manner and effective date of service of the pre-suit notice, not the content requirements.

### D.       *Practical Effect of Court of Appeals' Interpretation*

In construing a statute, the practical effects of different interpretations must also be considered in light of the "object" of the statute and "'the purpose sought to be accomplished in its enactment.'" *Coffee Cnty. Bd. of Educ.*, 574 S.W.3d at 845-46.

As noted above, the Court of Appeals has held in numerous cases that plaintiffs must substantially comply with the content requirements in subsection (a)(2), and in particular the requirement of a HIPAA-compliant medical authorization, in order to rely on the 120-day extension of time for filing the lawsuit provided in subsection (c) of Section 121. The practical effect of this interpretation shows that it is misguided and at odds with the legislative intent of Section 121.

The majority in this case correctly explains the holding in *Stevens*, that to determine a healthcare liability plaintiff's substantial compliance with the content requirements in Section 121, reviewing courts consider the extent and significance of the plaintiff's errors and omissions, including whether the defendant suffered prejudice. *Stevens*, 418 S.W.3d at 555.  If the noncompliance interferes with the purpose of Section 121 or deprives the defendant of a benefit the statute confers, the defendant has been prejudiced and the plaintiff has failed to substantially comply.  If on the other hand, despite the errors, the purpose of the statute is fulfilled and the defendant receives the intended benefit, then there is substantial compliance.

*Stevens* established that a healthcare liability plaintiff's failure to substantially comply with the content requirements of Section 121 will result in dismissal of the complaint without prejudice.  However, this Court has not expressly addressed whether a healthcare liability plaintiff must substantially comply with the content requirements, and specifically the medical authorization form, in order to rely on the 120-day extension of time to file suit.[7]

---

[7] In *Stevens*, the Court expressly declined to rule on whether plaintiffs must substantially comply with the content requirements in subsection (a)(2) of Section 121 in order to be entitled to the 120-day extension of time to file suit.  418 S.W.3d at 560 (declining to address whether dismissal without prejudice for failure to provide a HIPAA-compliant medical authorization "would effectively operate as a dismissal with prejudice because [the plaintiff's] claim would be time-barred"). The majority opinion in the instant case presumes plaintiffs must comply with the content requirements in subsection (a)(2) in order to rely on the 120-day extension, but does not separately analyze the issue; that question is left for another day.

However, our Court of Appeals has done so. The first case appears to be *Byrge v. Parkwest Medical Center*, 442 S.W.3d 245 (Tenn. Ct. App. 2014). In *Byrge*, the plaintiff's first lawsuit was filed after expiration of the one-year statute of limitations but within the 120-day extension period. *Id*. at 247. It was voluntarily dismissed, re-filed, and then dismissed as untimely because the medical authorization sent for the first lawsuit did not comport with two HIPAA requirements. *Id*. On this basis, the trial court held that the 120-day extension was inapplicable, so the first and second lawsuits were both time-barred. *Id*.

The Court of Appeals in *Byrge* affirmed with essentially no analysis. The appellate court said only that, in order to rely on the 120-day extension, the plaintiff "must have complied with Tenn. Code Ann. § 29-26-121." *Id*. at 249-50. The court said that because the plaintiff "failed to comply with Tenn. Code Ann. § 29-26-121," he "did not receive the 120 day extension, and, therefore, his first complaint was not timely filed." *Id*. at 250.

Since *Byrge*, the Court of Appeals has dismissed numerous healthcare liability lawsuits, holding with little analysis that failure to comply with the content requirements in subsection (a)(2) of Section 121 precludes plaintiffs from relying on the 120-day extension of time. *See, e.g.*, *Gray v. Saint Francis Hospital-Bartlett, Inc.*, No. W2018-00836-COA-R9-CV, 2019 WL 1750945 (Tenn. Ct. App. Apr. 16, 2019) (*perm. app. pending*); *Webb v. AMISUB (SFH) Inc.*, No. W2017-02539-COA-R3-CV, 2019 WL 1422884, at *4 (Tenn. Ct. App. Mar. 29, 2019) (*perm. app. pending*); *Wenzler v. Xiao Yu*, No. W2018-00369-COA-R3-CV, 2018 WL 6077847, at *11 (Tenn. Ct. App. Nov. 20, 2018); *Dortch v. Methodist Healthcare Memphis Hosps.*, No. W2017-01121-COA-R3-CV, 2018 WL 706767, at *4 (Tenn. Ct. App. Feb. 5, 2018), *perm. app. denied* (Tenn. June 7, 2018); *Lawson v. Knoxville Dermatology Grp., P.C.*, 544 S.W.3d 704, 713 (Tenn. Ct. App. 2017), *perm. app. denied* (Tenn. Nov. 16, 2017); *Rush v. Jackson Surgical Assocs. PA*, W2016-01289-COA-R3-CV, 2017 WL 564887, at *5 (Tenn. Ct. App. Feb. 13, 2017), *perm. app. denied* (Tenn. June 8, 2017); *Piper v. Cumberland Med. Ctr.*, No. E2016-00532-COA-R3-CV, 2017 WL 243507, at *4-5 (Tenn. Ct. App. Jan. 20, 2017); *J.A.C. ex rel. Carter v. Methodist Healthcare Memphis Hosps.*, 542 S.W.3d 502, 514 (Tenn. Ct. App. 2016), *perm. app. denied* (Tenn. Mar. 9, 2017); *Dolman v. Donovan*, No. E2015-00392-COA-R3-CV, 2015 WL 9315565, at *5 (Tenn. Ct. App. Dec. 23, 2015), *perm. app. denied* (Tenn. May 6, 2016); *Johnson v. Parkwest Med. Ctr.*, No. E2013-01228-COA-R3-CV, 2014 WL 3765702, at *6-7 (Tenn. Ct. App. July 31, 2014), *perm. app. denied* (Tenn. Dec. 17, 2014); *Roberts v. Prill*, E2013-02202-COA-R3-CV, 2014 WL 2921930, at *1 (Tenn. Ct. App. June 26, 2014).

All of these dismissals were based at least in part on flaws in the medical authorization form. Indeed, substantial compliance with that content requirement, a HIPAA-compliant medical authorization, has proven especially challenging. Given the exacting requirements in HIPAA, the more-forgiving "substantial compliance" standard set out in *Stevens* may be unrealistic to apply to a content requirement governed by a strict statute such as HIPAA. *Stevens*, 418 S.W.3d at 555 (holding substantial compliance to be standard for section 29-26-121 (a)(2)(E)).

In the instant appeal, Defendant Dr. Karl argues that "[t]he HIPAA regulations clearly dictate that a medical record authorization is useless with even one core element missing." There is Tennessee case law to support this assertion; Defendant Dr. Karl cites several Tennessee cases for the proposition that "even one core element missing from a medical record authorization renders the authorization useless for obtaining records" and thus not in substantial compliance. *See, e.g., Buckman v. Mt. States Health Alliance*, 570 S.W.3d 229, 231-32 (Tenn. Ct. App. 2018), *perm. app. denied* (Nov. 15, 2018) (claim dismissed because of erroneous expiration date); *Parks v. Walker*, No. E2017-01603-COA-R3-CV, 2018 WL 6242461, at *3 (Tenn. Ct. App. Nov. 28, 2018), *perm. app. denied* (Tenn. Mar. 27, 2019) (claim dismissed because of blank in space for purpose of the requested use or disclosure); *Lawson*, 544 S.W.3d at 708-09 (claim dismissed because of blank in space for designation of who is authorized to use or disclose the medical information).

Plaintiffs who sent imperfect medical authorizations have been found substantially compliant in very few instances. One such instance was a case in which the defendants had successfully used the medical authorizations to obtain the claimant's medical records, *Hunt v. Nair*, No. E2014-01261-COA-R9-CV, 2015 WL 5657083, at * 6 (Tenn. Ct. App. Sept. 25, 2015), *perm. app. denied* (Tenn. Jan. 21, 2016) (omission in medical authorization did not prejudice defendants because all but one provider produced the medical records in response to the authorization, and that one provider declined because it misread the authorization, not because of omission); and another where the defendant may not have actually even needed a medical authorization in order to access the claimant's medical records, *Hamilton v. Abercrombie Radiological Consultants*, 487 S.W.3d 114, 120-21 (Tenn. Ct. App. 2014), *perm. app. denied* (Tenn. May 15, 2015) (only omission in medical authorization was the date the authorized party signed the HIPAA form, and there was no evidence defendants were prejudiced by the omission because defendant physician may have had access to the records through her employment

with codefendant medical group).[8] While I do not disagree with the majority's holding that "defendants need not 'test' incomplete and facially noncompliant medical authorizations," this holding will likely mean that *even fewer* cases involving flawed medical authorizations will result in a finding of substantial compliance because defendants will no longer even try to use imperfect medical authorizations.[9]

In sum, the Court of Appeals' interpretation of subsection (c) of Section 121, requiring substantial compliance with the subsection (a)(2) content requirements in order for plaintiffs to rely on the 120-day extension to file, has had the practical effect of causing numerous dismissals of healthcare liability lawsuits on technical grounds. Amicus Tennessee Trial Lawyers Association points to this type of result as contrary to Tennessee's longstanding policy of deciding civil actions on their merits, not on procedural technicalities. They urge the Court to interpret Section 121 so that it does not operate to "simply bar access to recovery in cases presumably screened by qualified experts and deemed meritorious for technical reasons that have nothing to do with advancing appropriate and legitimate societal interest and public policy."

I agree. We have long aimed to ensure "that cases and controversies be determined upon their merits and not upon legal technicalities or procedural niceties." *Jones v. Prof'l Motorcycle Escort Serv., L.L.C.*, 193 S.W.3d 564, 572 (Tenn. 2006) (quoting *Karash v. Pigott*, 530 S.W.2d 775, 777 (Tenn.1975)). The Court of Appeals' interpretation results in such frequent dismissal with prejudice of otherwise meritorious cases on purely

---

[8] *But see, Bray v. Khuri*, 523 S.W.3d 619, 622 (Tenn. 2017) (holding that plaintiffs "need not provide a HIPAA-compliant authorization when a single healthcare provider is given pre-suit notice of a healthcare liability claim."). *Hamilton* predated *Bray*. After *Bray*, it is less likely that the fact situation in Hamilton would have resulted in a finding of substantial compliance with the medical authorization requirement.

[9] Given the potential for unwittingly ending up with an untimely lawsuit, wary plaintiffs' only other alternative is to eschew the 120-day extension altogether and file the lawsuit within the original one-year statute of limitations. This practical effect also shows that the Court of Appeals' interpretation of subsection (c) runs counter to legislative intent. The healthcare liability statutes now place considerable additional burdens on plaintiffs, such as obligations to hire an expert, obtain a good faith certificate, and file the pre-suit notice at least 60 days before the complaint is filed. The 120-day extension is clearly intended to offset those burdens. An interpretation that compels plaintiffs to avoid using the 120-day extension has the effect of shortening the statute of limitations for healthcare liability actions. This is contrary to the express language in subsection (c), which states: "In no event shall this section operate to *shorten* . . . the statutes of limitations or repose applicable to any action asserting a claim for health care liability[.]" Tenn. Code Ann. § 29-26-121(c) (emphasis added).

technical grounds that it borders on the "absurd result" that we are to avoid in construing statutes. *See Tennessean v. Metro. Gov't of Nashville*, 485 S.W.3d 857, 872 (Tenn. 2016).

## E.    Conclusion

In *Myers v. AMISUB (SFH), Inc.*, this Court rightly observed that subsection (c) of section 29-26-122 plainly states that a healthcare liability plaintiff's failure to file a certificate of good faith makes his claim "subject to dismissal with prejudice." *Myers*, 382 S.W.3d at 311 (citing Tenn. Code Ann. § 29–26–122(c)).   However, Section 121 contains no such language as to the content requirements for the pre-suit notice.  Had the legislature intended dismissal with prejudice to be the consequence for attaching an imperfect medical authorization to the pre-suit notice, it would have included dismissal with prejudice as a sanction for noncompliance, as it did with the certificate of good faith requirement in section 29-26-122.  It chose not to do so.

Yet, as shown above, the practical result of the Court of Appeals' statutory construction, linking compliance with the content requirements to the ability of a plaintiff to rely on the 120-day extension, is to make dismissal with prejudice the *de facto* sanction for filing a flawed medical authorization.

The content requirements in subsection (a)(2) of Section 121 were enacted to "facilitate early resolution of healthcare liability claims." *Stevens*, 418 S.W.3d at 554. The Court of Appeals' interpretation of subsection (c) of Section 121 ends up being counter to that legislative purpose. As illustrated by the many Court of Appeals cases on the medical authorization, plaintiffs routinely file health care liability lawsuits after the one-year statute of limitations but during the 120-day extension.   The pre-suit notice statute contains no provision requiring potential defendants to notify plaintiffs of claimed errors in content, such as flawed medical authorizations, prior to the filing of the lawsuit. Healthcare liability defendants who receive deficient medical authorizations, who may otherwise have pursued settlement, are instead incentivized to remain silent about perceived procedural deficiencies, thus thwarting the chances of settlement prior to the filing of the lawsuit. Indeed, in the current circumstances, it may be malpractice for defense counsel to inform their opponents of possible errors in the pre-suit notice until it is too late to correct them.  Consequently, plaintiffs often learn of a challenge to the medical authorization or other content requirements via defendants' motions to dismiss or for summary judgment after the lawsuit is filed. *Myers*, 382 S.W.3d at 307.  By this time, the statute of limitations has often elapsed, making the action time-barred unless the 120-day extension of time applies.

The language of subsection (c) of Section 121 does not demand such an interpretation. The evolution of Section 121 shows that this interpretation was not intended by our legislature. The evolution of Section 121 from the original 2008 version to the substantially expanded and reorganized 2009 version, the nature of the amendments, and the placement of the new language in the amended statute, all indicate that the legislature intended the 120-day extension to file suit to be linked to the manner and effective date of service of the pre-suit notice, not the content requirements.

In real life, as opposed to the virtual reality of legal proceedings, if a person presents a medical provider with an imperfect medical authorization, the authorization is handed back with directions to fix it and re-submit it, so as to permit the provider to legally release the medical records. Our legislature was aware of this when Section 121 was amended. The requirement of a HIPAA-compliant medical authorization was not added to Section 121 to trip up plaintiffs; it was added to facilitate pre-suit settlement negotiations.

Holding that the 120-day extension of time to file suit is not contingent on substantial compliance with the content requirements in subsection (a)(2) furthers that legislative purpose. If plaintiffs whose sole error is to attach an imperfect medical authorization to the pre-suit notice can rely on the 120-day extension, dismissal of the lawsuit without prejudice gives them the opportunity to re-file their lawsuits with corrected medical authorizations. This allows the parties to conduct settlement negotiations instead of skirmishing over summary judgment motions based on technical procedural grounds. That result is consonant with legislative intent and consistent with our "general presumption against dismissing cases with prejudice on procedural grounds." *Stevens*, 418 S.W.3d at 560. As stated in *Stevens*, a "plaintiff's less-than-perfect compliance with Tenn. Code Ann. § 29-26-121(a)(2)(E) . . . should not derail a healthcare liability claim." *Id.* at 555.

To be sure, failure to substantially comply with a content requirement such as the HIPAA authorization will still result in dismissal without prejudice of the healthcare liability action, as we held in *Stevens*. However, failure to substantially comply with subsection (a)(2) of the pre-suit notice statute would not prevent plaintiffs from relying on the 120-day extension of time in subsection (c) of that statute, and re-filed lawsuits would not be dismissed as untimely.

Interpreting Section 121, I would hold that the 120-day extension of time to file suit is not contingent on plaintiffs' substantial compliance with the so-called "content requirements" in subsection (a)(2) of Section 121. Rather, I would hold that the

- 12 -

availability of the 120-day extension in subsection (c) hinges on compliance with the provisions referenced in that subsection; i.e., plaintiffs may rely on the 120-day extension so long as they serve the mandatory pre-suit notice to providers, required under subsection (a)(1), in accordance with the provisions on personal service or service by mail.

For that reason, I respectfully dissent from the majority's conclusion that the Plaintiffs' re-filed lawsuit is untimely.

_____
HOLLY KIRBY, JUSTICE

- 13 -