FILED

03/22/2021

Clerk of the
Appellate Courts

IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
August 26, 2020 Session

## STATE OF TENNESSEE v. MICHAEL PATRICK SULLIVAN and DEBRA CLARK BUCKNER, ALIAS[1]

### Appeal from the Criminal Court for Knox County
### Nos. 110136; 110137       Steven W. Sword, Judge

_____

### No. E2019-01471-CCA-R3-CD

_____

The Defendants, Michael Patrick Sullivan and Debra Clark Buckner, alias, appeal from their Knox County Criminal Court convictions for animal cruelty, for which they each received an effective sentence of eleven months, twenty-nine days, suspended to supervised probation. On appeal, the Defendants argue that Tennessee Code Annotated section 39-14-211 requiring a probable cause determination by a qualified livestock examiner is a condition precedent to an animal cruelty conviction and that the evidence was insufficient to establish the examiner's qualifications in this case. Following our review, we conclude relative to co-defendant Sullivan that this court is without jurisdiction to consider his appeal because he was granted judicial diversion. Relative to co-defendant Buckner, we affirm.

### Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed in Part; Appeal Dismissed in Part

D. KELLY THOMAS, JR., J., delivered the opinion of the court, in which NORMA MCGEE OGLE and ROBERT H. MONTGOMERY, JR., JJ., joined.

Darren V. Berg (at motion for new trial and on appeal), and Van R. Irion (at trial), Knoxville, Tennessee, for the appellants, Michael Patrick Sullivan and Debra Clark Buckner, alias.

Herbert H. Slatery III, Attorney General and Reporter; T. Austin Watkins, Assistant Attorney General; Charme P. Allen, District Attorney General; and Randall J. Kilby, Assistant District Attorney General, for the appellee, State of Tennessee.

---

[1] Co-defendant Buckner was named in the indictment as "Debra Clark Buckner, alias," and in the judgments as "Debra E. Buckner, alias." Motions filed by defense counsel and appellate counsel also named her as "Deborah Clark." For consistency, we will use the name listed in the indictment.

# OPINION

## FACTUAL BACKGROUND[2]

This case arises from a complaint that six horses and a Great Pyrenees dog on the Defendants' property were neglected. The March 2017 term of the Knox County Grand Jury charged the Defendants with seven counts of animal cruelty, a Class A misdemeanor. See Tenn. Code Ann. § 39-14-202(b).

The proof adduced at trial established that the Defendants ran a self-described rescue operation in which they took in horses of varying degrees of health in an effort to rehome them, rehabilitate them, sell them, or prevent their being sold for meat. Conflicting proof was presented by the State and the Defendants regarding the condition of the horses and the care provided to them; it was undisputed that some of the horses were in poor health, although it was at issue whether this was caused by underlying medical conditions, over which the Defendants had little control, or neglect. The defense claimed that the horses were provided with attentive care by the Defendants, their niece, and multiple veterinarians, and they also averred that some of the horses' health issues did not begin until after they were seized by the State. Relative to the dog, it was established that he walked with a limp after he was hit by a car and that the bone was not reset; co-defendant Sullivan testified that the Defendants consulted with a veterinarian and decided to delay care to allow the dog's punctured lung to heal before placing him under anesthesia for surgery. Co-defendant Sullivan also suggested that the charges in this case were retaliatory and related to an ongoing conflict between the Defendants, the Horse Haven of Tennessee rescue, and Knox County Detective Francesca Byrne.

The jury convicted the Defendants of animal cruelty in Counts 1, 2, 3, 6, and 7. The jury acquitted the Defendants of animal cruelty in Counts 4 and 5. The trial court, acting as thirteenth juror, found that the evidence was insufficient to support a conviction for Count 7 relative to the dog and dismissed the charge. The Defendants respectively received an effective sentence of eleven months, twenty-nine days, which was suspended to supervised probation; they were also ordered to pay $20,000 restitution to Horse Haven of Tennessee. In addition, the trial court granted co-defendant Sullivan judicial diversion pending successful completion of his probation and entered deferral orders to that effect.

---

[2] The Defendants have not challenged the sufficiency of the evidence or any evidentiary issues on appeal. Because their sole issue relates to the qualifications of the animal control officer who provided a probable cause determination at the time of a search warrant's execution, we will only summarize the facts presented at trial to the degree necessary to provide the general context of the case.

The Defendants subsequently filed a motion for new trial, alleging that Code section 39-14-211 created a condition precedent to their convictions for animal cruelty and that the State had not proven Animal Control Officer Michelle Cianflone's qualification to perform the horses' examination. They further averred that the statute was ambiguous as to the necessary qualifications of the livestock examiner. The trial court denied the motion, and the Defendants timely appealed.

## ANALYSIS

### I. Co-defendant Sullivan's Appeal

As a preliminary matter, the day before oral argument, the State filed a motion to dismiss co-defendant Sullivan's appeal because he was granted judicial diversion. Due to the proximity of the motion to oral argument, this court afforded appellate counsel ten days in which to file a response. Appellate counsel did not file a reply brief or any further pleadings.

The record reflects that the trial court granted co-defendant Sullivan judicial diversion contingent upon successful completion of his probation. The court entered orders of deferral for each of his convictions on July 19, 2018.

Tennessee Rule of Appellate Procedure 3(b) provides that a defendant may appeal as of right from "any judgment of conviction entered by a trial court." This court has previously stated that Rule 3 does not provide for an appeal as of right in cases in which judicial diversion was granted. See State v. Norris, 47 S.W.3d 457, 461-63 (Tenn. Crim. App. 2000) (concluding that no Rule 3 appeal could be filed from an order granting judicial diversion because no judgment of conviction existed and no denial of probation occurred). The Norris panel discussed that judicial diversion can only be granted with a defendant's consent and that as a practical matter, requesting judicial diversion involves choosing to waive some issues on appeal. See id. at 463 ("Although the choice to accept judicial diversion . . . perhaps jeopardizes the defendant's opportunity to raise a legal issue, the quid pro quo . . . is that the defendant who accepted diversion has a self-determined chance to emerge from the process without a conviction[.]"). As a result, appeals related to a case in which diversion has been granted must be brought under Rule of Appellate Procedure 9 or 10. Id.

The record reflects that after the trial court denied co-defendant Sullivan's pretrial motion to dismiss based upon Officer Cianflone's qualifications, defense counsel filed a December 20, 2017 application for permission to apply for a Rule 9 interlocutory appeal, which the trial court denied. The record does not reflect that counsel sought permission directly from this court to file a Rule 10 appeal. See, e.g., State v. Nathan Bernard Lalone,

No. E2016-00439-CCA-R3-CD, 2017 WL 2297653, at *9 (Tenn. Crim. App. May 25, 2017) ("If the trial court denies permission to appeal under Rule 9, the appellant may seek permission directly from this [c]ourt under Rule 10.") (citing Tenn. R. App. P. 10(a); State v. McKim, 215 S.W.3d 781, 791 (Tenn. 2007)). Defense counsel renewed his motion for an interlocutory appeal at a July 19, 2018 hearing rescheduling the motion for new trial hearing. The trial court responded that the Defendants could address their issue on appeal and that it did not feel an interlocutory appeal was appropriate.

We note that although this court may consider an improperly filed Rule 3 appeal as a petition for extraordinary relief pursuant to Rule 10, see Norris, 47 S.W.3d at 463, appellate counsel has not requested such relief despite the opportunity to do so. Moreover, we do not discern that Rule 10 relief is necessary.

This court may grant a Rule 10 application "if the lower court has so far departed from the accepted and usual course of judicial proceedings as to require immediate review" or "if necessary for complete determination of the action on appeal." Tenn. R. App. P. 10. If co-defendant Sullivan has successfully completed his probationary period, no judgments of conviction will be entered. If his probation is revoked and his convictions subsequently reinstated, he will be entitled to a Rule 3 appeal at that time. See State v. Armin Lars Begtrup, No. M2019-02038-CCA-R3-CD, 2020 WL 7054516, at *5 (Tenn. Crim. App. Dec. 2, 2020). We accordingly decline to convert co-defendant Sullivan's appeal into a Rule 10 appeal by permission and order that his appeal be dismissed.

## II.     Officer Cianflone's Qualifications

Co-defendant Buckner contends that Officer Cianflone was unqualified to perform the probable cause determination required by Tennessee Code Annotated section 39-14-211 (2015). Appellate counsel frames this issue as a challenge to the sufficiency of the evidence, arguing that Code section 39-14-211 creates a condition precedent to a conviction for animal cruelty, as defined in section 39-14-202, and that the State failed to prove Officer Cianflone's qualifications at trial. Co-defendant Buckner urges this court to conclude that section 39-14-211 is ambiguous with regard to the qualifications required to satisfy subsection 39-14-211(a)(1)(C) and directs this court to legislative history transcripts in which legislators discussed their concern that section 39-14-211 would exclude licensed veterinarians who attended veterinary school after completing only three years of undergraduate education.

The State responds that pursuant to other cases in which this court considered the sufficiency of the evidence relative to animal cruelty, Code section 39-14-211 has not been

construed as adding an element that must be proven by the State. The State also argues that Officer Cianflone's education satisfies the requirements of section 39-14-211(a)(1)(C).

Tennessee Code Annotated section 39-14-211 (2015)[3] provided:

> No entry onto the property of another, arrest, interference with usual and customary agricultural or veterinary practices, confiscation, or any other action authorized by this part or any other law shall be taken in response to an allegation that this part has been violated with regard to livestock unless, prior to or at the same time as such action, the livestock in question is examined by the county agricultural extension agent of the county, a graduate of an accredited college of veterinary medicine specializing in livestock practice or a graduate from an accredited college of agriculture with a specialty in livestock. If the extension agent, veterinary college graduate specializing in livestock practice or livestock specialist does not have probable cause to believe that a violation of this part has occurred with regard to the livestock, no action against the owner of the livestock described in this section shall be taken. If a person authorized by this section does not make an inspection within twenty-four (24) hours of receipt of a complaint, then a licensed veterinarian may make the inspection.

For purposes of Title 39, Chapter 14, livestock is defined as including "all equine." Tenn. Code Ann. § 39-14-201(2).

a. Procedural Facts

Co-defendant Buckner filed a pretrial motion to suppress the evidence obtained by the March 7, 2015 entry and search of the Defendants' property pursuant to a search warrant, arguing, in relevant part, that the search warrant affidavit contained false statements regarding the Tennessee Department of Agriculture's assessment of Officer Cianflone's qualifications.

At the August 25, 2017 suppression hearing, Officer Cianflone testified that she worked as an animal livestock specialist for the animal control division of the Knox County Sheriff's Office. She agreed that as part of her job, she made probable cause determinations in animal cruelty cases. Officer Cianflone stated that she had an associate's degree in equine studies from Laramie County Community College and a "four-

---

[3] We note that both parties cite in their briefs to the present version of Code section 39-14-211, which went into effect on April 6, 2016; the offenses in this case occurred on May 7, 2015. However, relevant to this appeal, the language of the statute as it existed in 2015 was identical to the version currently in effect.

year" degree from Colorado State University in biology with a minor in chemistry and a "preemphasis of pre-veterinarian." Upon examination by the trial court, Officer Cianflone affirmed that Laramie County Community College was an "accredited college of agriculture."

On cross-examination, Officer Cianflone testified that in addition to her post-secondary degrees, she grew up around horses and had "about [twenty-five] years of experience in equine." She stated that she had previously owned and operated a "high-end breeding and training facility" in Oregon; she had owned a "hall of fame stallion" who was "one of the leading sires in the nation and in the world"; she was chosen for a group of American horse trainers who traveled to Japan and taught for three months; and she taught and gave clinics as a Purina ambassador for three years. Officer Cianflone said that on April 21, 2015, the sheriff's office received a complaint about the Defendants' horses; Officer Cianflone and another officer traveled to the Defendants' property and observed horses in poor physical health. On April 29, 2015, Officer Cianflone further observed the property by flying a drone overhead and taking photographs. On May 7, 2015, Officer Cianflone entered the property. She stated that she had previously performed four or five probable cause determinations.

Defense counsel argued that according to United States Code Title 7, section 3103, a "non-land grant college of agriculture" was defined as a "public college or university offering a baccalaureate or higher degree" in agricultural sciences. Counsel stated that the intent of Tennessee Code Annotated 39-14-211 was to protect livestock owners and that it required a qualified individual to accompany law enforcement when serving a warrant; counsel averred that the statute "envision[ed] someone with a bachelor's degree." Counsel stated that in effect, a search warrant was invalid in these circumstances if a qualified person was not present to examine the livestock.

The State responded, relevant to Officer Cianflone's qualifications, that Tennessee Code Annotated section 49-8-101 recognized community colleges as colleges. The State noted Officer Cianflone's extracurricular experience with horses and averred that she would qualify as an expert witness. The State reasoned that it would not "make any sense that she would qualify as [an expert witness] and not be qualified under [section 39-14-211]."

The trial court entered a written order on October 5, 2017, finding that the May 7, 2015 search was conducted pursuant to a valid search warrant and that consequently, Code section 39-14-211 was not applicable. In a separate October 31, 2017 opinion, the court stated regarding the applicability of section 39-14-211,

–6–

The entry onto the property was made pursuant to the search warrant, not [section] 39-14-211. It does not matter if the person making the observations qualified under the statute. Any person can make observations about the condition of animals if obvious enough. Officer Cianflone had multiple degrees in equine studies. Whether or not that would allow her to enter onto the property and make an arrest without further authorization is irrelevant to the question before the court. The State did not rely upon her qualifications to make an entry onto the property, they obtained a search warrant. There is no requirement that a search warrant containing allegations of animal cruelty have any greater degree of probable cause than any other crime. [Section] 39-14-211 plays no role in this search.

The trial court further concluded that the search warrant was supported by probable cause even if information about Officer Cianflone's education was excluded, noting that probable cause was present based upon Officer Cianflone's observing that the horses were emaciated.

In addition, the Defendants filed a motion to dismiss based upon the State's having violated Tennessee Code Annotated section 39-14-211. The Defendants attached to the motion an email from Kim Bender, the associate vice president for institutional effectiveness at Laramie County Community College. The email stated in relevant part that the college was "not a college of agriculture per se," but rather "a community college in a rural setting." Ms. Bender wrote that the college was "regionally accredited by the Higher Learning Commission" and was on the "AQIP [Academic Quality Improvement Program] Pathway."

The State responded that section 39-14-211 only applied to warrantless entries and that because law enforcement had a warrant in this case, the Defendants' argument was inapposite. The State also provided a copy of Officer Cianflone's diploma and an email from Dr. Jill Koslosky, the interim dean of the School of Agriculture at Laramie County Community College, who stated that the college offered "agriculture degrees with specialties in animal science, equine science and crops." Dr. Koslosky listed the topics covered by the equine science program and noted that Officer Cianflone[4] would be "knowledgeable in identifying and giving a body condition score on a horse that [was] starved."

---

[4] Dr. Koslosky referred to Officer Cianflone by another surname, which was also reflected on Officer Cianflone's diploma.

The trial court filed a written order on November 21, 2017, repeating that the entry of the Defendants' property was made pursuant to a search warrant, not section 39-14-211, and that under such circumstances, "there [was] no need for the persons providing evidence in support of the affidavit to meet the qualifications outlined in the statute."[5]   The court noted that the Defendants provided no authority for the proposition that Code section 39-14-211 "trump[ed] any search warrant issued by a judge regarding investigations involving livestock."

The Defendants subsequently filed a motion for an interlocutory appeal, which the trial court denied.   In a January 10, 2018 order, the trial court found that the issue was not dispositive of the case because the State had proof of abuse prior to officers' entry onto the property, as indicated by the search warrant affidavit.   The court further found that as an issue of first impression, there was no need to resolve a contested matter in order to develop a uniform body of law, and a Rule 3 appeal would "be just as effective in addressing the issue."

b.   Analysis

"The most basic principle of statutory construction is to ascertain and give effect to the legislative intent without unduly restricting or expanding a statute's coverage beyond its intended scope."   Owens v. State, 908 S.W.2d 923, 926 (Tenn. 1995) (citing State v. Sliger, 846 S.W.2d 262, 263 (Tenn. 1993)).   Where the statute's language is clear and unambiguous, we derive the legislative intent from its plain and ordinary meaning.   State v. Collins, 166 S.W.3d 721, 726 (Tenn. 2005) (citing State v. Wilson, 132 S.W.3d 340, 341 (Tenn. 2004)).   If, however, "the parties derive different interpretations from the statutory language, an ambiguity exists, and we must look to the entire statutory scheme in seeking to ascertain legislative intent."   Owens, 908 S.W.2d at 926 (citing Lyons v. Rasar, 872 S.W.2d 895, 897 (Tenn. 1994)).   In ascertaining the intent of the legislature, courts "'may look to the language of the statute, its subject matter, the object and reach of the statute, the wrong or evil which it seeks to remedy or prevent, and the purpose sought to be accomplished in its enactment.'"   Collins, 166 S.W.3d at 726 (quoting State v. Gilliland, 22 S.W.3d 266, 275 (Tenn. 2000)).   "Statutes 'in pari materia'—those relating to the same subject or having a common purpose—are to be construed together."   Owens, 908 S.W.2d at 926 (citing Lyons, 872 S.W.2d at 897).   Furthermore, the rules of statutory construction direct courts not to "apply a particular interpretation to a statute if that interpretation would yield an absurd result."   State v. Sims, 45 S.W.3d 1, 11 (Tenn. 2001).

---

[5] We note that the appellate record only contains a written order containing co-defendant Sullivan's name. However, identical motions were filed relative to both Defendants, and the court's rationale applied equally to both Defendants, regardless of the caption on the order.

As a preliminary matter, we disagree with the trial court's assertion that Code section 39-14-211 only applies to warrantless searches. The legislature included no limiting language to that effect. The statutory language's plain and ordinary meaning is that a probable cause determination by a qualified livestock examiner is required before an entry, arrest, confiscation, or "any other action authorized by this part or any other law" is taken in response to an allegation of animal cruelty regarding livestock. Tenn. Code Ann. § 39-14-211 (2015) (emphasis added). In effect, our legislature has enacted an enhanced probable cause standard in regard to livestock owners accused of animal cruelty and related offenses. Therefore, the trial court erred by concluding that an otherwise properly issued search warrant would render issues of compliance with section 39-14-211 moot.

Next, we are constrained to note that although appellate counsel has framed co-defendant Buckner's issue as pertaining to the sufficiency of the evidence, it would be more appropriately presented as a challenge of the trial court's denial of her pretrial motions to suppress and dismiss. Insomuch as counsel avers that Code section 39-14-211 adds an additional element to the offense of animal cruelty that must be proven at trial, that argument is without merit. As the State correctly observes, this court has not looked beyond the elements articulated in Code section 39-14-202 when considering the sufficiency of the evidence in previous similar animal cruelty cases. See, e.g., State v. Matthew Edwards, No. E2017-02329-CCA-R3-CD, 2018 WL 5972775, at *4 (Tenn. Crim. App. Nov. 14, 2018); State v. Sandra Darlene Wood, No. M2016-01225-CCA-R3-CD, 2017 WL 6398342, at *3 (Tenn. Crim. App. Dec. 14, 2017). If the legislature had intended to add an element to animal cruelty, it would have placed the language in section 39-14-202. We note that co-defendant Buckner does not argue that the evidence is otherwise insufficient to support her convictions in regard to section 39-14-202.

Notwithstanding appellate counsel's discussion of the sufficiency of the evidence in both the motion for a new trial and on appeal, his discussion substantively implicates the pretrial motions to suppress and dismiss, and we will briefly review them in this context. The general recourse for an unlawful entry, search, or seizure of property is a pretrial motion to suppress. See Tenn. R. Crim. P. 41, 12(b)(2)(C). In addition, because Code section 39-14-211 proscribes "any other action authorized by this part or any other provision of law" in the absence of a proper livestock examination, a pretrial motion to dismiss "alleging a defect in the institution of the prosecution" would also be appropriate. See Tenn. R. Crim. P. 12(b)(2)(A). We note that defense counsel filed both types of motions before trial and unsuccessfully requested permission to file an interlocutory appeal from the denial of the motion to dismiss.

On appellate review of suppression issues, the prevailing party "is entitled to the strongest legitimate view of the evidence adduced at the suppression hearing as well as all

reasonable and legitimate inferences that may be drawn from the evidence." State v. Talley, 307 S.W.3d 723, 729 (Tenn. 2010) (quoting State v. Odom, 928 S.W.2d 18, 23 (Tenn. 1996)). Questions about "the assessment of witness credibility, the weight and value of evidence, and the resolution of evidentiary conflicts are entrusted to the trial court" as the trier of fact. State v. Meeks, 262 S.W.3d 710, 722 (Tenn. 2008). When the trial court "makes findings of fact in the course of ruling upon a motion to suppress, those findings are binding on appeal unless the evidence in the record preponderates against them." Id. Conversely, a trial court's conclusions of law, along with its application of the law to the facts, are reviewed de novo without any presumption of correctness. Id.

This court utilizes a two-step process when reviewing a trial court's decision regarding a motion to dismiss pursuant to Tennessee Rule of Criminal Procedure 12. State v. Sherman, 266 S.W.3d 395, 403 (Tenn. 2008). First, we consider whether the trial court appropriately based its decision upon conclusions of law, as opposed to a finding of fact that should have been determined by the jury; secondly, "as to questions of law, we review the trial court's holding de novo with no presumption of correctness." Id. (internal citations omitted).

Relative to both motions, the trial court erred by concluding that Code section 39-14-211 did not apply to situations in which a search warrant was obtained. The court noted in its order denying the motion to suppress that Officer Cianflone had "multiple degrees" in equine studies, which was inaccurate, but it did not reach the issue of whether she was qualified to conduct a probable cause determination. Similarly, the court found in its order denying the motion to dismiss that it was unnecessary to examine Officer Cianflone's qualifications because the statute was inapplicable. However, based upon the evidence in the record and exercising de novo review, we conclude that that Officer Cianflone was qualified to conduct the livestock examination.

Relative to co-defendant Buckner's argument that Officer Cianflone's two-year degree in equine studies from a community college does not satisfy the requirements of Code section 39-14-211, the plain language of the statute only specifies that the examiner be (1) a graduate; (2) of an accredited college of agriculture; (3) and the graduate specializes in livestock practice. The language of the statute does not restrict livestock examiners to those possessing four-year degrees; likewise, nowhere does the statue exclude community colleges or specify what type of accreditation is required. We will not expand or limit the scope of a statute beyond its natural meaning. We note that in the context of the Tennessee Code Annotated as a whole, community colleges are included in statutes governing institutions of higher education. See generally Tenn. Code Ann. § 49-7-101; Collins, 166 S.W.3d at 726.

Turning to co-defendant Buckner's remaining arguments, her assertion that Code section 39-14-211 is ambiguous due to the syntax of the phrase "graduate of an accredited college of agriculture with a specialty in livestock" is not well-taken. By continuing to the next sentence of section 211, wherein the statute provides that no action can be taken unless the appropriate determination is made by the "extension agent, veterinary college graduate specializing in livestock practice or livestock specialist," it is evident that the graduate of the agricultural college is required to have a specialization in livestock instead of the college's being specialized in livestock. We need not, therefore, delve into the legislative transcripts.

The proof presented at the pretrial hearings established that Laramie County Community College was regionally accredited by the Higher Learning Commission, had a School of Business, Agriculture, and Technical Studies, and offered agriculture degrees with a specialization in "equine science." Officer Cianflone obtained an associate's degree in equine studies, which included the coursework she needed to perform body scoring and determine when a horse was starving. The record reflects that Officer Cianflone was qualified to perform a probable cause determination in this case pursuant to the statutory language. Co-defendant Buckner is not entitled to relief on this basis.

<u>CONCLUSION</u>

In light of the foregoing and the record as a whole, co-defendant Sullivan's appeal is dismissed. Relative to co-defendant Buckner's appeal, we affirm the judgments of the trial court.

_____
D. KELLY THOMAS, JR., JUDGE

–11–